[No. 43776. En Banc. July 15, 1976.]

EDWARD W. HAYES, *Respondent*, v. GEORGE YOUNT, ET AL, *Appellants*.

*J. Grahame Bell,* for appellant Yount.

*Slade Gorton, Attorney General, Charles B. Roe, Jr., Senior Assistant,* and *Robert V. Jensen* and *Charles W. Lean, Assistants,* for appellants State, et al.

*Anderson, Hunter, Dewell, Baker & Collins, P.S.,* and *William W. Baker,* for respondent.

*Jon G. Schneidler, Stanley R. Schultz,* and *Phillip J. Nicolai* on behalf of Western Environmental Trade Association of Washington, Inc., *Malcolm S. McLeod* on behalf of

Swinomish Aboriginal Tribe of Indians, *Christopher T. Bayley, Prosecuting Attorney for King County, John E. Keegan, Deputy, J. Dimmitt Smith,* and *Roland W. Johnson,* amici curiae.

UTTER, J.—The Department of Ecology, the Attorney General, and a private citizen appeal from an order of the Superior Court granting respondent's motion for summary judgment and reinstating a substantial development permit issued by Snohomish County to fill 93 acres of wetlands in the Snohomish River estuary. That permit, required by the Shoreline Management Act of 1971, RCW 90.58, authorized "operation of a solid waste landfill and marine industrial area" on respondent's property. A review of the county decision was made by the Shorelines Hearings Board which vacated the permit and remanded the matter for further consideration by the county. Respondent petitioned for review of the board's final order in Superior Court. The court held certain findings and the order of the board to be arbitrary and capricious and further held the board's action in the particular circumstances to be an unconstitutional taking of private property. We conclude, however, that the findings, conclusions, and order of the Shorelines Hearings Board are neither arbitrary and capricious nor clearly erroneous and that the board's order imposes no present permanent restriction on the use of respondent's property. The judgment of the trial court is therefore reversed and we remand the matter for further proceedings consistent with this opinion.

Respondent owns approximately 90 acres of unimproved land bordered by Eby Slough on the north, Steamboat Slough on the south, and the Tulalip Indian Reservation on the west. In 1891, dikes were constructed on three sides of the property to protect against inundation by tides and allow agricultural use. The dikes were breached in 1959, and since that time a large portion of the site has been subject to periodic tidal inundation for about one-third of each day. The subject property is intersected by Interstate

Highway 5, old Highway 99, and railroad trackage. Approximately one-half of the area, that located east of Interstate Highway 5, is now a saltwater marsh habitat. The entire site is part of the area designated by the legislature as "[s]horelines of state-wide significance." RCW 90.58.030-(2)(e)(v)(A); 90.58.030(2)(e)(vi); 90.58.030(2)(f).

Prior to passage of the Shoreline Management Act of 1971, respondent obtained a flood control permit to operate a sanitary landfill. Before the permit expired in April 1975, some 10 acres of the site had been partially filled with nonputrescible solid waste. Vegetation and wildlife on the remainder of the site are typical of Puget Sound salt marshes. The wetland supports a variety of animals, including ducks, and conflicting evidence was presented as to the importance of the site in the life cycle of commercially important fish. Surrounding land uses include three lumber mills, a boat marina, and a sewage settlement basin across the slough to the north. The parcel to the west has recently been filled with solid waste from a municipal source. Across a slough to the south lies a boat manufacturer and boat works. In the Snohomish River estuary to the east there is some farming, but no commercial or industrial activity.

In March 1973, respondent filed with Snohomish County[1] his application for a substantial development permit. *See* RCW 90.58.140(2); 90.58.030(3)(e). The application sought a permit to operate a solid waste landfill and to "continue to expand trans-shipping capabilities and heavy industrial use." A site plan, vicinity map and an "environmental assessment" prepared by respondent were included in the material submitted with the application. Respondent's publication of notice of hearing on the application described the proposed development as a "[m]arine industrial area." After receipt of this material, the county determined that the project constituted a major action significantly affecting

---

[1] At the time of respondent's application, the subject property was within Snohomish County. Subsequently, respondent's land was annexed by the City of Marysville.

the quality of the environment within RCW 43.21C.030 and an environmental impact statement was prepared pursuant to the State Environmental Policy Act of 1971, RCW 43.21C. The final environmental impact statement described the proposed project as "landfilling [with 937,000 cubic yards of fill material], channel extension, two docks, certain dredging, a future railroad spur, and construction of a steel fabrication facility."

The planning staff and planning commission of the county, after a public hearing, recommended denial of the permit sought by respondent. These findings and recommendations were considered and rejected by the county commissioners who, in September 1973, granted a substantial development permit "for operation of a solid waste landfill and marine industrial area," adding the condition that "[o]nly nonputrescible wastes . . . be allowed" in the fill. This condition was not, however, made a part of the language of the permit.

Appellants filed a formal request for review by the Shorelines Hearings Board and pursuant to the Shoreline Management Act of 1971, the board held a 3-day de novo hearing, taking the testimony of 21 witnesses and receiving 84 exhibits. In April 1974, the board submitted to the parties its proposed findings of fact, conclusions of law, and order. No exceptions were taken and the following month these findings, conclusions, and order were made final by the board.

All the sitting members of the Shorelines Hearings Board concurred in its findings and conclusions.[2] The board found that the 10 acres previously filled constituted an "eyesore" and that, although the river estuary constitutes a fragile ecosystem, the ecological impact of the proposed fill would be "insignificant." The board also found that the "cumulative effect of other such developments would cause irreversible damage to the ecosystem of the estuary at

---

[2]The Shorelines Hearings Board is composed of six members. RCW 90.58.170. However, for reasons not appearing in the record, only four members conducted the public hearings and rendered the board's decision in the present case.

some unknown and unpredictable stage of development." In its conclusions of law the board interpreted WAC 173-16-060(14)(c) to mandatorily prohibit the disposal of solid wastes, but not other types of fill, within shoreline areas. The board determined that the permit did not describe with particularity and certainty what type of development was being authorized and that the county's failure to include conditions in the language of the permit itself would lead to further controversy and uncertainty on the part of both the public and permittee. It concluded that the substantial development permit was too vague to ascertain the extent to which the proposed use was consistent with the policy set forth in RCW 90.58.020.

The order of the board, as distinguished from its findings and conclusions, was signed by only three members. It vacated the permit and remanded the matter to the county for reconsideration of the issuance of a permit in accordance with the board's findings and conclusions (e.g., that the fill material be other than solid waste) and limited in area to the existing 10-acre landfill on the site. The fourth board member concurred in the above order "as far as it goes" but further stated he would allow respondent to also fill that portion of the site to the west of Interstate Highway 5, an additional area of approximately 32 acres.

Respondent filed in Superior Court a petition for review of the board's decision. See RCW 90.58.180(3). The court granted respondent's motion for summary judgment, holding certain actions of the board arbitrary and capricious and concluding that "as applied to this particular set of facts the order and regulation (WAC 173-16-060(14)(c)) constitute an unconstitutional taking of property." The trial court ordered the substantial development permit issued by the county reinstated with the additional restriction that the fill be covered with at least 18 inches of compacted soil or sand.[3]

---

[3]Neither party challenges that portion of the trial court judgment requiring the fill material to be covered with soil or sand. However, we observe that the imposition of additional conditions or other modifica-

## I

█ The proceedings of the Shorelines Hearings Board, a quasi-judicial body, and judicial review of its decisions regarding shoreline development permits are governed by the administrative procedure act, RCW 34.04. RCW 90.58.170; 90.58.180(3). Its actions are to be affirmed unless the administrative findings, conclusions, or decisions are "clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order; or . . . arbitrary or capricious." RCW 34.04.130(6)(e), (f); *Department of Ecology v. Ballard Elks Lodge 827*, 84 Wn.2d 551, 555, 527 P.2d 1121 (1974); *Stempel v. Department of Water Resources*, 82 Wn.2d 109, 113-14, 508 P.2d 166 (1973). Agency action is "arbitrary or capricious" if there is no support in the record for the action which is therefore *" 'wilful and unreasoning action, in disregard of facts and circumstances.' " Northern Pac. Transp. Co. v. State Util. & Transp. Comm'n,* 69 Wn.2d 472, 478, 418 P.2d 735 (1966). Under the more rigorous "clearly erroneous" standard agency action may be reversed where the reviewing court is firmly convinced that a mistake has been committed, even though there is evidence supporting the action. *Ancheta v. Daly*, 77 Wn.2d 255, 260, 461 P.2d 531 (1969). The existence of such a mistake must be considered by the court in light of the policy contained in the authorizing statute, which is made part of the standard of review by RCW 34.04.130(6)(e). *Schuffenhauer v. Department of Employment Security*, 86 Wn.2d 233, 235, 543 P.2d 343 (1975). Under neither standard may a court simply substitute its judgment for that of the agency. *Farm Supply Distribs., Inc. v. State Util. & Transp. Comm'n*, 83 Wn.2d 446, 449, 518 P.2d 1237 (1974).

█ In the present case, the trial court concluded that

tions of shoreline permits is not authorized by the statutes governing judicial review of decisions of the Shorelines Hearings Board. *See* RCW 90.58.180(3); 30.04.090 *et seq.; cf. Pettit v. Board of Tax Appeals*, 85 Wn.2d 646, 651-52, 538 P.2d 501 (1975) (constitutional power of judicial review).

certain of the Shorelines Hearings Board's findings, conclusions, and its order were arbitrary and capricious and thus apparently found it unnecessary to consider whether the agency's actions were clearly erroneous. On appeal, this court's review is governed by all applicable standards of review, not only that applied by the court below, since this court reviews the administrative action and record independently. *See Norway Hill Preservation & Protection Ass'n v. King County Council*, 87 Wn.2d 267, 552 P.2d 674 (1976); *Department of Ecology v. Ballard Elks Lodge 827, supra* at 555; *Ancheta v. Daly, supra* at 260.

■ The memorandum opinion of the trial court refers to two aspects of the board's actions which the court labeled arbitrary and capricious. First, the court held it arbitrary "on its face" for the board to restrict the fill on the ground that future developments similar to respondent's proposed fill would result in irreversible ecological harm after having found the proposed fill itself would have an insignificant environmental effect.[4] Assuming that the legal effect of the board's order was to restrict the fill, we note that the board did not rely solely on potential future harm as a ground for vacating the permit issued by the county. Its findings and conclusions clearly indicate there were several factors which prompted the board to vacate the substantial development permit. In addition, the finding of insignificant environmental effect and the board's conclusion are in no way inconsistent. Logic and common sense suggest that numerous projects, each having no significant effect individually, may well have very significant effects when taken together. This concept of cumulative environmental harm has received legislative and judicial recogni-

---

[4]In finding of fact No. 10 the board stated in part:

"The hundreds of acres of land in the estuary of the Snohomish River constitutes a fragile ecosystem. About one-half; i.e., 46 acres, of the site is a salt water marsh habitat. The dike contains a muskrat habitat. Although a filling of the site would mean a loss of a portion of the total estuary, the ecological or environmental impact of a fill would be insignificant. However, the cumulative effect of other such developments would cause irreversible damage to the ecosystem of the estuary at some unknown and unpredictable stage of development."

tion. *See, e.g., Sierra Club v. Morton,* 514 F.2d 856, 870-72 (D.C. Cir. 1975); *Scientists' Institute for Pub. Information, Inc. v. Atomic Energy Comm'n,* 481 F.2d 1079, 1085-93 (D.C. Cir. 1973); *Minnesota Pub. Interest Research Group v. Butz,* 358 F. Supp. 584, 621-22 (D. Minn. 1973); *Natural Resources Defense Council, Inc. v. Grant,* 341 F. Supp. 356, 357 (E.D.N.C. 1972); *Narrowsview Preservation Ass'n v. Tacoma,* 84 Wn.2d 416, 423, 526 P.2d 897 (1974). In the Shoreline Management Act of 1971 itself, the legislature and people of this state recognized the necessity of controlling the cumulative adverse effect of "piece-meal development of the state's shorelines" through "coordinated planning" of all development, not only "substantial development." RCW 90.58.020. *See* WAC 197-10-440(8)(c) (State Environmental Policy Act of 1971 guideline). The fact that respondent himself cannot control future filling in the Snohomish River estuary does not, in itself, render arbitrary and capricious the board's concern over the ultimate impact of such development in light of its statutory duties. *See* RCW 90.58.140; 90.58.020.

The second aspect of the actions of the Shorelines Hearings Board found arbitrary by the trial court was the board's decision to vacate the permit by relying in part on WAC 173-16-060(14)(c) even though the board found no evidence that leachates (*i.e.,* water which has percolated through the soil or fill material) from the proposed landfill would have a deleterious effect on the quality of adjacent waters.[5] The board interpreted the above regulation to pro-

---

[5]In finding of fact No. 8 the board stated:

"A solid waste landfill containing only nonputrescible wastes can cause leachates. The subsoil of the site is relatively impermeable, thus causing any leachates to move horizontally. There is no evidence that leachates from this site would have a deleterious effect on the adjacent waters."

In conclusion of law No. 2 the board stated in part:

"The dispositive guideline in this case is that of the Department of Ecology found at WAC 173-16-060(14)(c). . . .

". . .

"We interpret the above guideline to mean and hold that it mandatorily prohibits the disposal of solid wastes within the shoreline areas."

hibit the disposal of solid wastes within shoreline areas. The trial court expressed its belief that the sole purpose of the regulation was to prevent harm to adjacent waters from leachates and apparently concluded that a finding of such harm was prerequisite to the application of WAC 173-16-060(14)(c). Although not articulated as such by the trial court, its holding is that the board's application of the regulation was "affected by [an] error of law" in its interpretation, an exercise of judicial review authorized by RCW 34.04.130(6)(d).

We decline to reverse the administrative conclusion of law with respect to WAC 173-16-060(14)(c) and are not firmly convinced that a mistake was committed in the application of the regulation to the circumstances of this case. In previous appeals from decisions of the Shorelines Hearings Board, we have recognized that "[i]n the course of judicial review, due deference must be given to the specialized knowledge and expertise of the administrative agency." *Department of Ecology v. Ballard Elks Lodge 827*, *supra* at 556; *cf. Hama Hama Co. v. Shorelines Hearings Board*, 85 Wn.2d 441, 448, 451, 536 P.2d 157 (1975). Similarly, the United States Supreme Court has shown "great deference" to the interpretation given a statute by the agency charged with its administration and stated "[w]hen the construction of an administrative regulation rather than a statute is in issue, deference is even more clearly in order." *Udall v. Tallman*, 380 U.S. 1, 16, 13 L. Ed. 2d 616, 85 S. Ct. 792 (1965); *see Zuber v. Allen*, 396 U.S. 168, 192-93, 24 L. Ed. 2d 345, 90 S. Ct. 314 (1969). In addition, the legislative mandate that the Shoreline Management Act of 1971 be "liberally construed to give full effect to the objectives and purposes for which it was enacted", RCW 90.58.900, supports the more expansive construction of the regulation adopted by the board.

WAC 173-16-060(14)(c) provides that "[f]ill materials should be of such quality that it will not cause problems of water quality. Shoreline areas are not to be considered for sanitary landfills or the disposal of solid

waste." The trial court's interpretation, requiring a finding of adverse effect on adjacent waters prior to application of the regulation, in effect adds a proviso not found in the regulation. Moreover, a principle of statutory construction is that a statute or regulation should, whenever possible, be interpreted so that no portion of it is superfluous, void, or insignificant. *Snow's Mobile Homes, Inc. v. Morgan*, 80 Wn.2d 283, 288, 494 P.2d 216 (1972); *Des Moines v. Hemenway*, 73 Wn.2d 130, 135, 437 P.2d 171 (1968). This principle of construction is equally applicable to administrative regulations, particularly where such regulations are adopted pursuant to express statutory authorization. *See* RCW 90.58.200. The trial court's interpretation would render superfluous the mandatory language regarding solid waste. The second sentence of WAC 173-16-060(14)(c) expresses an administrative determination that sanitary landfills and solid waste fills possess such a great potential for adverse environmental consequences that they are not even to be considered compatible with shoreline areas. Such a conclusion is fully consistent with the policies set forth in RCW 90.58.020. The regulation does not prohibit all filling in shoreline areas. Rather, landfills other than sanitary fills and fill materials other than solid waste may be allowed when water quality problems will not result. Although WAC 173-16-060 states that "[e]xceptions to specific provisions of these guidelines may occur where local circumstances justify such departure", it would be a substitution of our judgment for that of the board to conclude that all pertinent local conditions justified an exception in this case.[6]

■■ Respondent and amicus curiae assert that in two additional respects the actions of the Shorelines Hearings Board were clearly erroneous. First, it is argued that since

---

[6]The same regulation also provides that "[a]ny departure from these guidelines must, however, be compatible with the intent of the act as enunciated in RCW 90.58.020" and further that the "guidelines are adopted state regulations . . . and must be complied with . . . in permit application review . . ." WAC 173-16-060. *See* WAC 173-14-100.

respondent's parcel is unlike other portions of the estuary, it was clearly erroneous for the board to conclude "[w]e are concerned about establishing a precedent of allowing fills in that portion of the Snohomish River estuary . . . easterly of I-5." While the record shows that respondent's land is in some respects different from that in other parts of the estuary, we are not firmly convinced that a mistake was committed by the board in voicing its "concern." Whether a particular development will serve as a precedent for later development depends as much upon the factual similarities of the locations, also demonstrated by the record in this case, as it does upon the distinctions. Second, it is argued that the board erred in relying in part on WAC 173-16-060(14)(c) in vacating the permit even though respondent offered to accept additional restrictions on the nature of the fill material to be imposed by the board. We find no merit in this contention. Respondent may still make effective his offer to accept such restrictions by submitting to the county an application for a permit which is consistent with the board's interpretation of WAC 173-16-060(14)(c). Respondent's offer before the board to accept additional conditions on the permit did not alter the duty of the board to rule on the specific permit before it which did not contain such conditions.

■ As noted above, the public policy set forth in the Shoreline Management Act of 1971 is part of the standard of judicial review of the actions of the Shorelines Hearings Board. We have previously noted "the enunciated policy [of the act] stresses the need that . . . future development be carefully planned, managed, and coordinated in keeping with the public interest" in the shorelines of the state. *Department of Ecology v. Ballard Elks Lodge 827*, 84 Wn.2d 551, 557, 527 P.2d 1121 (1974). The legislature expressly recognized the "clear and urgent demand" for planned and coordinated use of shoreline areas and declared "the interest of all of the people shall be paramount in the management of shorelines of state-wide significance." RCW 90.58.020. Protection against adverse effects on the

public health, the land and its vegetation and wildlife, and the water and its aquatic life, and preservation of the public's opportunity to enjoy the physical and aesthetic qualities of the natural shorelines is also provided for. Furthermore, the legislature clearly stated its finding "that unrestricted construction on the privately owned or publicly owned shorelines of the state is not in the best public interest". RCW 90.58.020. In view of this strong and explicit statement of public policy, we are not left with the firm conviction that a mistake was committed by the board in any of its actions in the present case. Moreover, the board's findings, conclusions, and order are supported by ample evidence, demonstrating that the administrative actions were not "willful and unreasoning" and hence not arbitrary and capricious.

## II

The judgment of the trial court also declared the order of the Shorelines Hearings Board[7] and WAC 173-16-060(14)(c) as applied to the circumstances of this case an unconstitutional taking of the respondent's property. Cf. RCW 34.04.130 (6)(a). Because it is determinative of this issue, the legal effect of the board's order is vigorously disputed by the parties. The implicit conclusion of the court below was that the order limited to 10 acres the area of fill which would be approved by the county on respondent's reapplication for a substantial development permit.

Although inartfully expressed in RCW 90.58.170, the intent of the legislature was to require that binding action of

---

[7]The order, signed by three members of the board, reads in full as follows:

"The permit is vacated and the matter is remanded to Snohomish County for its reconsideration of the issuance of a permit which is in accordance with these Findings and Order and which is limited in area to only that part of the site which would cover over the existing solid waste landfill located easterly of I-5."

The fourth member of the board signed the following additional statement:

"Having personally written the Findings of Fact and Conclusions of Law, I agree and concur with them. I also concur with the Order, as far as it goes. However, I would allow respondent to also fill that area westerly of I-5."

the Shorelines Hearings Board be agreed to by at least four members of the board. *Department of Ecology v. Kirkland,* 84 Wn.2d 25, 31, 523 P.2d 1181 (1974). The board has similarly interpreted the statute. Thus, "ultimate decisions shall be by at least four or more members of the Board", WAC 461-12-034, and "in the event that four members cannot agree on a decision, the substantive decision of the local government unit will control", WAC 461-08-235.

In the present case, four members of the board agreed that the permit issued by the county should be vacated for reasons specified in the board's findings and conclusions, and thus the county's decision was effectively reversed. Prior to the effective date of an applicable shoreline master program, the issuance of permits by local governments and their review by the Shorelines Hearings Board is governed by the standards set forth in RCW 90.58.140(2)(a), which provides that all substantial developments must be consistent with the policies set forth in RCW 90.58.020, the guidelines and regulations of the Department of Ecology, and, so far as can be ascertained, the master program being developed for the area. Applying these criteria, the board found first that at the time of the issuance of the permit, the Snohomish County master program was not ascertainable. Four board members further determined that the permit issued by the county was inconsistent with the prohibition on solid waste fills contained in departmental regulation WAC 173-16-060(14)(c), as discussed above, and that the permit was so vague in nature it rendered virtually impossible a review of the consistency of the proposed project with the policies and guidelines of the Shoreline Management Act of 1971.[8] Both conclusions are valid grounds for

---

[8] In conclusions of law No. 4 and 5 the board stated:

"RCW 90.58.020 states that 'industrial and commercial developments which are particularly dependent on their location on or use of the shorelines of the state' shall be given priority in those limited instances where 'alterations of the natural conditions of the shorelines of the state' is allowed. Because the subject permit is too vague to ascertain, with the certainty required by this Board, what it authorizes, we are unable to determine the issues of this case relating to water-dependency. It is our view that a water-dependent commerce or industry, to

vacation of the permit and are amply supported by the evidence.

The relevant policy of RCW 90.58.020 provides:

> [U]ses shall be preferred which are . . . *unique to or dependent upon use of the state's shoreline.* Alterations of the natural condition of the shorelines of the state, in those limited instances when authorized, shall be given priority for . . . industrial and commercial develop-ments which are *particularly dependent on their location on or use of the shorelines* of the state . . .

(Italics ours.) This policy is embodied in several guidelines, *see* WAC 173-16-060(4) (a), 173-16-060(10) (a) (d) (g), in-cluding WAC 173-16-060(14) (d) which states that "[p]riority should be given to landfills for water-dependent uses and for public uses." The policy of preference for water-dependent uses reflects the legislature's careful at-tention to an important concept of environmentally sound land use planning. Encouraging uses not dependent on the shoreline to locate in inland areas is an effective aid in the resolution of competing demands on our limited shorelines resources. The policy builds on the fundamental notions that the use of land should depend to a great extent on the suitability of a site for the particular use and that land may possess "intrinsic suitability" for certain uses. "In principle,

---

which priority should be given, is one which cannot exist in any other location and is dependent on the water by reason of the *intrinsic* nature of its operations. A water-related industry or commerce is one which is not intrinsically dependent on a waterfront location but whose operation cannot occur *economically* without a shoreline location." Conclusion of law No. 4.

"If local government issues a permit upon certain conditions, those conditions should appear on the permit itself or by reference stated therein and with the reference attached thereto. The failure of Snoho-mish County to issue permits in that form can only lead to further controversy and uncertainty not only to the public but to the permittee as well. The Board makes the same criticism of the subject matter of the permit. We are urged to find that the purpose and scope of the permit is to be found in the enviromental impact statement. We refuse to do so. The permit itself should describe with particularity and certainty what is being authorized. The description on the subject permit as a 'marine industrial area' does not meet our test when no further explan-atory material is attached to or expressly made a part of the permit." Conclusion of law No. 5.

only land uses that are inseparable from waterfront locations should occupy them; and even these should be limited to those which do not diminish the present or prospective value of surface water for supply, recreation or amenity." I. McHarg, *Design with Nature* 58 (1969). This concept has been embodied in many plans for areas adjacent to water. *See, e.g.,* Lake Washington Regional Citizens Advisory Committee, Technical Committee, *Lake Washington Regional Shoreline Goals and Policies* 7-8, 18-19, 30 (October 31, 1973); Association of Bay Area Governments, *Regional Ocean Coastline Plan* (1973); San Francisco Bay Conservation and Development Commission, *San Francisco Bay Plan* 1, 15, 17-18, 23 (1969). The criterion of water dependency is included in other legislation and is applied by governmental agencies analogous to the Shorelines Hearings Board. *See, e.g.,* Cal. Gov't Code §§ 66602, 66605 (Supp. 1976); M. Mogulof, *Saving the Coast, California's Experiment in Intergovernmental Land Use Control* 17 (1975); Baum, *San Francisco Bay Conservation and Development Commission,* 5 Lincoln L. Rev. 98, 109, 114 (1970); Coastal Zone Management Institute, *Coastal Zone Management: The Process of Development* 33-34 (1974).

 In the present case, the board correctly concluded that it could not carry out its statutory duty to further the important priority of use policy because the permit did not describe respondent's proposed use in sufficient detail. The permit issued to respondent by Snohomish County described the authorized uses only as "operation of a solid waste landfill and marine industrial area." The permit did not include, through incorporation by reference and attachment, a detailed site plan or a description of the particular uses. *Cf.* WAC 173-14-110. Although the environmental impact statement contains a further description, that document is not part of the permit. Under the Shoreline Management Act of 1971, the scope and extent of authorized uses is defined only by the contents of the development permit itself. Effective operation of the permit review process, as well as enforcement of the act, *see* RCW 90.58-

.210-.230, demands that shoreline permits be complete in themselves and contain sufficient detail to enable the local government and the board to determine consistency with the policy of preferred water-dependent uses and other policies set forth in RCW 90.58.020 and the implementing regulations. The description "marine industrial area" is not sufficiently specific to allow the county or the board to carry out the statutory obligation imposed by RCW 90.58.140(2)(a). The board did not err in vacating the substantial development permit on this ground.

Respondent contends that whatever the validity of the grounds for the board's decision, the effect of the order is to restrict the use of the site so severely as to constitute an unconstitutional taking of property. He interprets the order as limiting the area to be filled to 10 acres. However, as discussed above, binding decisions of the Shorelines Hearings Board must be agreed to by at least four members of the board. In this case, only three members of the board voted to limit the fill to 10 acres. Only one member voted to allow approximately 42 acres of fill. The fact that four members were in agreement that fill should be allowed on the same 10 acres does not alter the fact that four members did not agree on the critical question of the total area to be filled. The inevitable consequence of an order in this form makes it clear that the statements of the various board members with respect to the area of fill are not legally binding: if the county wished to issue a second permit in accord with the board's findings and conclusions, *neither a permit to fill 10 acres nor a permit to fill 42 acres would be consistent with a position taken by four board members.* Because "ultimate decisions shall be by at least four or more members of the Board", WAC 461-12-034, no *binding* decision was made by the board in this case with respect to the size of the area to be filled. The determination of what acreage, if any, may be filled remains for future decision by the county, in its reconsideration of respondent's application, and the Shorelines Hearings Board, if review of the county decision is subsequently sought.

■ The only legal effect of the action of the board in this case is to vacate the permit issued by Snohomish County and remand the matter for further consideration by the county, which may reissue a permit in accord with the findings and conclusions adopted by four members of the board.[9] Because no present permanent restriction on respondent's property results from the order of the board, no question as to its constitutionality is presented by this appeal. *See Brecciaroli v. Connecticut Comm'r of Environmental Protection*, 5 Envir. L. Rptr. 20319 (April 15, 1975). Under a different permit specifying in detail the uses authorized and the conditions imposed, and requiring fill material other than solid waste, respondent may well be able to engage in his proposed use or another use. Similarly, the constitutionality of WAC 173-16-060(14)(c) as applied is not presented by this appeal since the restrictive effects, if any, of its application depend upon the scope and nature of a permit not yet issued by the county. We note that respondent has emphasized his willingness to accept additional conditions on the type of fill material. The constitutional ruling sought by respondent cannot be predicated on factual circumstances which are at this time conjectural.

Judgment reversed; remanded.

STAFFORD, C.J., and ROSELLINI, HUNTER, HAMILTON, WRIGHT, BRACHTENBACH, and HOROWITZ, JJ., concur.

---

[9] In conclusion of law No. 7 the board stated:

"The specific permit which is the subject matter of this review should be vacated, but a permit should be granted in accordance with the principles set forth herein."