[No. 14929-0-II.   Division Two.   February 10, 1992.]

EASTLAKE COMMUNITY COUNCIL, ET AL, *Appellants,* v. THE CITY OF SEATTLE, ET AL, *Respondents.*

*Henryk J. Hiller* and *Peter J. Eglick,* for appellants.

*Mark H. Sidran, City Attorney,* and *Miriam M. Reid, Assistant; John W. Hempelmann* and *Cairncross & Hempelmann P.S.; John C. McCullough, Jr.,* and *Heller, Ehrman, White & McAuliffe,* for respondents.

PETRICH, C.J. — The Shorelines Hearings Board by summary judgment approved the issuance of a master use per-

mit by the City of Seattle to the Dally Development Corporation. The permit authorized the construction of an office building on the shores of Lake Union. The Eastlake Community Council and the Floating Homes Association, together with individual members of these groups (Eastlake Association) appeal from the Superior Court's affirmance of the Board's decision. They contend that the proposed development runs afoul of the Seattle Shoreline Master Program and the Shoreline Management Act of 1971, RCW 90.58, because it lacks a qualified water-dependent use and because the parking lease secured in connection with the development lacks permanency. We affirm.

On December 11, 1989, the City of Seattle's Department of Construction and Land Use approved Dally's request for a land use permit to construct a building containing an office complex and a rowing club along the Lake Union shoreline. Dally intends to utilize the top three floors of the complex for office space and the bottom floor is to be used by the Pocock Rowing Foundation as a rowing facility. In order to ensure permit approval, Dally also secured an off-site parking lease through the Fuhrman Avenue Parking Associates.

On review at the request of Eastlake Association, the Shorelines Hearings Board heard motions for partial summary judgment by Dally and the City of Seattle and approved the issuance of the permit. The Eastlake Association voluntarily dismissed the remaining issues and sought review in the Thurston County Superior Court.

On January 17, 1991, the Superior Court affirmed the decision of the Board with one minor exception.[1] Eastlake Association filed this appeal, seeking direct review by the Supreme Court, and the case was subsequently transferred to this division.

---

[1] In his oral opinion the trial judge did require that the parking covenant between Dally and the Fuhrman Avenue Parking Associates be executed by the Department of Transportation in order to be more consistent with the Seattle Shoreline Master Program.

■ The review proceedings of the Shorelines Hearings Board are subject to the provisions of the Administrative Procedure Act, codified in RCW 34.05. RCW 90.58.180(3). The Administrative Procedure Act does not contain any provisions authorizing agencies to grant summary judgment. However, the Washington Supreme Court has held "that a legislatively created agency or board, when acting in a quasi-judicial capacity, may employ summary procedure if there is no genuine issue of material fact." *Asarco, Inc. v. Air Quality Coalition*, 92 Wn.2d 685, 697, 601 P.2d 501 (1979). Thus the Board was within its power to grant an order of summary judgment. Accordingly, this court must view the facts and reasonable inferences in the light most favorable to the nonmoving party. *Citizens for Clean Air v. Spokane*, 114 Wn.2d 20, 39, 785 P.2d 447 (1990). Construing the facts and inferences in the light most favorable to Eastlake Association, we conclude that the Board was correct in granting summary judgment in favor of Dally Development and the City of Seattle.

SHORELINE MANAGEMENT ACT

Eastlake Association argues that the approval and affirmation of Dally's substantial development permit conflicts both with the policies of the Shoreline Management Act of 1971, as set out in RCW 90.58.020, as well as the Board's prior interpretation of these policies. The relevant portion of RCW 90.58.020 delineates public policy relating to shoreline development and sets out a number of uses which are given priority, including "industrial and commercial developments which are particularly dependent on their location on or use of the shorelines of the state and other development that will provide an opportunity for substantial numbers of the people to enjoy the shorelines of the state." RCW 90.58.020.[2]

---

[2]The relevant portion of RCW 90.58.020 provides:
"In the implementation of this policy the public's opportunity to enjoy the physical and aesthetic qualities of natural shorelines of the state shall be preserved to the greatest extent feasible consistent with the overall best interest of the state and the people generally. To this end uses shall be preferred which are consistent with control of pollution and prevention of damage to the

Under Eastlake Association's reading of the act, the proposed offices must be an integral part of the water dependent use, or the entire project must provide for substantial public access to the shoreline.

This particular section of the Shoreline Management Act of 1971 has been construed in the past by the Supreme Court as permitting commercial shoreline development that is not water dependent and did not provide for public access to the shoreline. In *Department of Ecology v. Ballard Elks Lodge 827*, 84 Wn.2d 551, 552, 527 P.2d 1121 (1974), the Supreme Court considered a case where the Shorelines Hearings Board ordered the City of Seattle to issue a permit allowing construction of a clubhouse over the water of Shilshole Bay. The clubhouse was to contain a restaurant, a cocktail lounge, a billiard room, a gymnasium, and swimming pool facilities, none of which would be open to the public. *Ballard Elks*, at 558-59. In support of its decision to order the issuance of the building permit, the Board found that the development would not have a detrimental effect upon the shoreline and it would provide an opportunity for substantial numbers of people to enjoy the shoreline. *Ballard Elks*, at 559. The Supreme Court affirmed the Board's decision, noting that the Board acted "with a practical eye upon the densely developed portion of shoreline in the immediate vicinity of the subject property", and followed the relevant guidelines and policies of the Shoreline Management Act of 1971 as set out in RCW 90.58.020. *Ballard Elks*, at 559.

In support of their argument, Eastlake Association cites the Shorelines Hearings Board's decision in SHB 156 (1975), which articulated a different interpretation of RCW 90.58.020. In *Adams v. Seattle*, Shorelines Hearings Bd.

---

natural environment, or are unique to or dependent upon use of the state's shoreline. Alterations of the natural condition of the shorelines of the state, in those limited instances when authorized, shall be given priority for single family residences, ports, shoreline recreational uses including but not limited to parks, marinas, piers, and other . . . development that will provide an opportunity for substantial numbers of the people to enjoy the shorelines of the state."

Dec. 156 (1975), the Board affirmed the denial of a permit application to build offices above a yacht moorage on Lake Union, stating that "[a]ny office building which is not an integral part of, or related to, a water-dependent use would be inconsistent with the policy of the Act unless the entire development would 'provide an opportunity for substantial numbers of the people to enjoy the shoreline of the state.' " *Adams*, at 5. According to the Board in *Adams*, the proposed development was inconsistent with the policies behind the Shoreline Management Act of 1971 as set out in RCW 90.58.020 because it was a non-water-dependent use that did not provide for public enjoyment of the shorelines, and was not related to the water-dependent use to which it was attached.

■ ■ In the order being appealed from, the Board explicitly overruled the *Adams* decision to the extent that it required an integral relation with a water-dependent use. In reaching its decision to overturn *Adams*, the Board recognized that it had recently held in another case that general office use is not inconsistent with RCW 90.58.020. The interpretation placed on a statute by an administrative agency charged with its application should be given great weight. *Hama Hama Co. v. Shorelines Hearings Bd.*, 85 Wn.2d 441, 448, 536 P.2d 157, 161 (1975) (affirming the Board's interpretation of conflicting provisions of the Shoreline Management Act of 1971). Eastlake Association cites no authority limiting the Board's ability to overturn its prior decisions. The plain language of the statute clearly does not compel the conclusion that a shoreline office building must be an integral part of, or be related to, the water-dependent use built in conjunction with the offices. Therefore, Eastlake Association's contention that the Board order was in violation of the Shoreline Management Act of 1971 is without merit.

SEATTLE SHORELINE MASTER PROGRAM

Eastlake Association also contends that the proposed development in this case is in violation of the Seattle Shore-

line Master Program.[3] This portion of the Seattle Shoreline Master Plan is codified at section 23.60.600(C) of the Seattle Municipal Code and reads in relevant part:

The following uses shall be permitted outright on waterfront lots in the Urban Stable environment as either principal or accessory uses:

. . . .

C. 1. The following non-water-dependent commercial uses on dry land when the requirements of subsection C2 are met:

. . . .

d. Offices in the Lake Union area above the ground floor of a structure when permitted uses other than office or residential uses occupy the ground-floor level, and parking on the ground-floor level is limited to required parking,

. . . .

2. The uses listed in subsection C1 shall be permitted when a water-dependent use occupies forty percent (40%) of the dry-land portion of the lot . . ..

Seattle Municipal Code 23.60.600. It is Eastlake Association's view that this provision of the Seattle Municipal Code requires that any office building built on the Lake Union/urban stable shoreline must devote its ground floor to a use that provides extraordinary public access, even where the ground floor occupant is a water-dependent use.

■ Eastlake Association attempts to justify its reading of SMC 23.60.600 by referring to the legislative history behind its enactment. Where, as here, the language is plain and unambiguous, the statute's meaning must be derived from the wording of the statute itself. *Vita Food Prods., Inc. v. State*, 91 Wn.2d 132, 134, 587 P.2d 535 (1978). As observed previously, the language of this ordinance clearly sets out the requirements for office developments on the shoreline of Lake Union. It is inappropriate to look to the legislative history where the intent can clearly be divined from the plain language of the ordinance.

The plain language of the ordinance clearly communicates the council's intent that office buildings on Lake

---

[3]Eastlake Association alternatively argues that if the Seattle Shoreline Master Program does provide for the type of shoreline development proposed, it is inconsistent with the Shoreline Management Act of 1971. The Shoreline Management Act of 1971 does allow this type of development, thus this particular facet of the argument does not merit analysis.

Union must either be occupied in part by a water-dependent use, or, if occupied by a non-water-dependent use, provide both public access to the shoreline and amenities for public use. The proposed development by Dally contains a water-dependent use on the ground floor, thus it is consistent with the Seattle Shoreline Master Program.

POCOCK AGREEMENT

Although Eastlake Association does not dispute that a rowing club is a water-dependent use, it contends that the agreement with the rowing club is insufficiently certain to constitute a water-dependent use under section 23.60-.600(C)(2) of the Seattle Municipal Code. It argued that since the permit does not contain an explicit "condition" requiring that the ground floor be reserved for the rowing club and that the facility be occupied, it does not meet the requirements under the Seattle Municipal Code.[4]

The Board in its order granting summary judgment in part correctly pointed out that inclusion of rowing facilities in the development is an element of the permit rather than a condition. The Board stated that since it is an element of the permit, the inclusion of the rowing facility is required if development under the permit is to proceed. *See SAVE v. Bothell*, Shorelines Hearings Bd. Dec. 85-39 (1986) (development pursuant to subsequent shoreline permits must be in compliance with the prior durable condition in the original permit). In its order the Board stated that any change in the development plan through either a revision or the issuance of a new permit would be reviewable by the Board and that any change inconsistent with the Shoreline Manage-

---

[4]The relevant portion of the Master Use Permit issued to Dally provides as follows:

"Construct: four story structure containing 26,300 sf of floor area. The 8,000 sf ground floor level and 4,000 sf of outdoor area along with the entire submerged tidelands will be used by a water-dependent user, the 'George Pocock Rowing Foundation.' The remaining 16300 sf of upper story floor area will be used as administrative office. Accessory parking will be provided in the Fuhrman Avenue Parking Association lot located south of Fuhrman Avenue East."

ment Act of 1971 or the Seattle Shoreline Master Program would not be upheld.[5]

█ Eastlake Association cites no authority supporting the proposition that the lack of a long-term commitment is fatal to a permit of this type.[6] In its order, the Board noted that it has previously held that no property interest is required in order for a permit to issue. *See Plimpton v. King Cy.*, Shorelines Hearings Bd. Dec. 84-23 (1985); *Casey v. Tacoma*, Shorelines Hearings Bd. Dec. 79-19 (1979).[7] While not directly on point, these cases tend to indicate that absolute certainty of future use is not required for a permit to issue under the act, since a party need not even own the property in order to obtain approval to develop it.

Under WAC 173-17-050 "[A] person who fails to conform to the terms of a permit issued under RCW 90.58.140, . . . may be subject to a civil penalty" imposed by either the Department of Ecology or the local government. A party failing to adhere to the Shoreline Management Act of 1971 or the local master plan is also subject to more severe penalties under WAC 173-17-040, which provides:

> **Order to cease and desist.** Local government and/or the department shall have the authority to serve upon a person a cease and desist order if an activity being undertaken on shorelines of the state is in violation of chapter 90.58 RCW or the local master program.

---

[5]In *Gislason v. Friday Harbor*, Shorelines Hearings Bd. Dec. 81-22 (1981), the Board affirmed the denial of an application for revision of a substantial development permit because it did not comply with the water-dependent-use requirement of the Shoreline Management Act of 1971 or the local shoreline management plan.

[6]Eastlake Association cites *Hayes v. Yount*, 87 Wn.2d 280, 552 P.2d 1038 (1976) for the proposition that shoreline development permits must be specific and detailed. *Hayes*, at 285. However, the court in *Hayes* was considering a permit which authorized a "solid waste landfill and marine industrial area.' " *Hayes*, at 295. The permit issued to Dally for the construction of the office building/rowing facility was clearly more detailed than the permit being considered in *Hayes*.

[7]In *Casey v. Tacoma*, Shorelines Hearings Bd. Dec. 79-19 (1979), the SHB reversed the denial of a substantial development permit by a Tacoma city hearings examiner where the permit was denied because the applicant lacked "a legally recognized interest in the subject property and, accordingly, is without standing to request a Shoreline Management Substantial Development Permit." *Casey*, at 3.

In the event that the Pocock Rowing Foundation no longer occupied the bottom floor of the proposed building, Dally Development would be in violation of the terms of the existing permit and would thus be subject to fines under WAC 173-17-050.

The agreement with the Pocock Rowing Foundation is clearly sufficient to satisfy the water-dependent-use requirement of the Shoreline Management Act of 1971 as implemented by the Seattle Shoreline Master Plan.

PARKING AGREEMENT

According to Eastlake Association, the parking lease secured by Dally does not fulfill the parking requirements for developments in shoreline districts as set out in section 23.54.025 of the Seattle Municipal Code. This ordinance requires in part:

> When parking is provided on a lot other than the lot of the use to which it is accessory, the following conditions shall apply:
> A. The owner of the parking spaces shall be responsible for notifying the Director should the use of the lot for covenant parking cease. . . .
> B. A covenant between the owner or operator of the principal use, the owner of the parking spaces and The City of Seattle stating the responsibilities of the parties shall be executed.

Seattle Municipal Code 23.54.025. The parking lease obtained by Dally is terminable by the Department of Transportation on 90 days' notice. According to Eastlake Association, in order to fulfill the requirements of the Seattle Municipal Code, the parking lease would have to be a binding, long-term, enforceable agreement. No authority supporting the imposition of this strict requirement is cited.

■ Seattle's Department of Construction and Land Use, the body issuing the permit in this case, has routinely deemed terminable Department of Transportation leases sufficient to fulfill the parking requirement under the Seattle Municipal Code. Where one of these leases is terminated by the Department of Transportation, the Department of Construction and Land Use has authority to

require that the principal use be discontinued. A court should give special deference to the construction of an ordinance by those officials charged with its enforcement. *Mall, Inc. v. Seattle*, 108 Wn.2d 369, 377-78, 739 P.2d 668 (1987). Eastlake Association gives no reason why this practice is contrary to law or the policy behind the parking requirements. Accordingly, we hold that the terminable Department of Transportation lease involved in this case fulfills the requirements of the Seattle Municipal Code.

The Shorelines Hearings Board decision granting partial summary judgment is affirmed.

MORGAN, J., and SWANSON, J. Pro Tem., concur.

Review denied at 119 Wn.2d 1005 (1992).