[No. 44798. En Banc. March 9, 1978.]

PENINSULA TELEPHONE AND TELEGRAPH COMPANY, *Appellant*, v. THE WASHINGTON UTILITIES AND TRANSPORTATION COMMISSION, ET AL, *Respondents*.

*Theodore D. Schultz* and *E. Robert Fristoe* (of *Fristoe, Taylor & Schultz, Ltd., P.S.*), for appellant.

*Slade Gorton, Attorney General, Frank P. Hayes, Senior Assistant,* and *John W. Hough, Assistant,* for respondent State.

*Alan J. Gardner, Thomas R. Beierle,* and *Edmund B. Raftis,* for respondent Pacific Northwest Bell.

DOLLIVER, J.—This is an appeal from the Superior Court for Thurston County which affirmed the ruling of the Washington Utilities and Transportation Commission (Commission) in a rate dispute between Peninsula Telephone and Telegraph Company (PenTel) and Pacific Northwest Bell Telephone Company (PNB). Plaintiff and defendant PNB participate in providing telephone services between and beyond the respective telephone exchanges of each company. This controversy involves division of joint toll revenues for the time period between September 7, 1969, and August 15, 1970, during which no agreement existed between the companies establishing a revenue division rate.

Division of revenues generated by these services is accomplished by establishing a rate which equitably apportions the joint toll revenue, and this matter of revenue division has been in dispute for a number of years. In 1960,

two independent telephone companies, West Coast Telephone Company and General Telephone Company of the Northwest, instituted causes Nos. U–9208 and U–9224 before the Washington Public Service Commission (now the Washington Utilities and Transportation Commission) to obtain an order fixing the methods to be used in dividing the joint toll revenues generated by intrastate toll messages. *See West Coast Tel. Co. v. Pacific Tel. & Tel. Co.*, 42 P.U.R.3d 65 (1961). Several other independent telephone companies, including PenTel, intervened. The Commission ultimately determined the "Charleston Plan" was the most equitable method by which to apportion the joint toll revenues and ordered the independents and Pacific Telephone and Telegraph Company (the predecessor of Pacific Northwest Bell Telephone Company) to negotiate the respective rate of return allowed to each company and to report to the Commission within 90 days.

The order was appealed and ultimately reached this court. Our holding affirmed all orders of the Commission in the two causes. We further noted, "The Commission retained jurisdiction of the proceedings to effectuate the provisions of the order." *See State ex rel. Pacific Northwest Bell Tel. Co. v. State Util. & Transp. Comm'n*, 66 Wn.2d 411, 441, 403 P.2d 73 (1965).

Prior to our decision, PenTel and PNB entered into an agreement November 14, 1962, which resolved the issue of fair rate of return. This agreement, employing the Charleston Plan, remained operative until its termination by PenTel effective September 7, 1969. The termination complied with the contractual term allowing cancellation by either party within a specified time after written notice.

Prior to the cancellation, on January 3, 1969, the Washington Independent Telephone Association (WITA), of which PenTel is a member, intervened in the proceedings before the Commission in cause No. U–9880, asking the Commission to establish a different means of dividing joint toll revenue.

On September 29, 1970, pursuant to a petition filed by WITA and PNB, the Commission entered an order in No. U–9880 which, among other things (1) approved a new separations agreement, the "Ozark Plan", as the basis for division of intrastate revenues in Washington effective August 15, 1970; (2) set aside the order in causes Nos. U–9224 and U–9208 and declared them to be no longer applicable as of August 15, 1970; and (3) provided that any changes in intrastate toll settlement procedures negotiated between telephone companies and deviating from the Ozark Plan would be subject to Commission scrutiny.

Because the Charleston Plan was in effect until September 7, 1969, and the Ozark Plan was agreed upon between PenTel and PNB for periods subsequent to August 15, 1970, this dispute concerns amounts due during the time period between those two dates.

PenTel made no remittance to PNB for amounts allegedly accruing during the open period. PNB made no remittance to PenTel for amounts allegedly accruing after the effective date of the Ozark Plan, August 15, 1970. This resulted in PenTel's filing a complaint in Clallam County Superior Court for $73,851.95 allegedly due them from PNB for the time period September 7, 1969, through September 13, 1971.

As an offset in that suit, PNB claimed $21,116.40 which they alleged was due them for the time period September 7, 1969, through August 15, 1970. The court ruled PenTel was entitled to $38,481.53, plus interest, pursuant to the Ozark Plan for the time period subsequent to August 15, 1970. The court further determined it had no jurisdiction to divide revenues accruing during the open period. It stated:

[T]he Court does not have jurisdiction over the subject matter of the setoff . . . for the reason that the initial primary jurisdiction over the subject matter rests with the Washington Utilities and Transportation Commission.

Following dismissal of its claimed setoff, PNB initiated proceedings on June 19, 1972, before the Commission

(cause No. 72–28 tp) to establish an equitable division of joint toll revenues for the open period from September 7, 1969, to August 15, 1970. Ruling in favor of PNB, the Commission stated:

1. By virtue of the provisions of RCW Title 81, the Washington Utilities and Transportation Commission has jurisdiction over the subject matter of this application.

2. To achieve the most just, reasonable and equitable division of intrastate joint toll revenues, this Commission should direct that settlements between PNB and PenTel for the period of September 7, 1969 to August 15, 1970, be made on the basis of paragraph IV(d) of the November 14, 1962 "Charleston Plan" type traffic agreement, and this Commission should determine the correct sum for that period based on paragraph IV(d) in the sum of $21,116.40, and without interest thereon.

3. PenTel could not unilaterally cancel the portion of the November 14, 1962 "Charleston Plan" traffic agreement and yet receive, as it did, the benefits of interconnection of facilities under that agreement. Paragraph IV(d) of that agreement is binding on the parties for the period of September 7, 1969 to August 15, 1970.

The Commission, having entered its findings of fact and conclusions of law herein, enters the following order.

ORDER

IT IS THEREFORE ORDERED That the fair, just, reasonable and equitable division of intrastate tolls between complainant Pacific Northwest Bell Telephone Company and respondent Peninsula Telephone and Telegraph Company, for the period of September 7, 1969 to August 15, 1970, due complainant is in the sum of $21,116.40, without interest thereon.

On July 20, 1973, PenTel filed its petition for review of the Commission ruling in Thurston County Superior Court and on July 21, 1975, the trial court entered its memorandum opinion affirming the Commission ruling.

Plaintiff PenTel first argues the Commission lacks subject matter jurisdiction to establish rates for the period in question. Its argument asserts the open period antedates the Commission's assumption of jurisdiction and, therefore,

the Commission has no authority to engage in retroactive rate making.

The Commission assumed jurisdiction under RCW 80.36.160, which provides, in pertinent part:

> In order to provide toll telephone service where no such service is available, or to promote the most expeditious handling or most direct routing of toll messages and conversations, or to prevent arbitrary or unreasonable practices which may result in the failure to utilize the toll facilities of all telephone companies equitably and effectively, the commission may . . . after hearing, by order . . . (3) establish reasonable joint rates or charges by or over said lines and connections and just, reasonable and equitable divisions thereof as between the telephone companies participating therein.

PenTel argues the statute does not expressly grant the Commission authority to engage in retroactive rate making and that an administrative agency must be strictly limited in its operation to those powers specifically granted it by the legislature. Necessary to PenTel's contention that the Commission exceeded its authority is a finding by this court that the Commission lacked jurisdiction over the subject matter during the open period. We find otherwise.

By its order in the consolidated cases (U–9208 and U–9224), the Commission expressly retained jurisdiction *to effectuate the provisions* of its order. The primary provision of the order was implementation and operation of the Charleston Plan of revenue division. Thus, the Commission assumed jurisdiction over the area of revenue division as to the joint toll revenues. The remaining question is whether this assumption of jurisdiction continued through the open period. We conclude it did.

The Commission did not rescind its jurisdiction over the area during the period between initial assumption thereof and the order entered in cause No. U–9880 where it set aside the 1961 order. *See State ex rel. Pacific Northwest Bell Tel. Co. v. State Util. & Transp. Comm'n, supra.*

Plaintiff PenTel next argues the Commission's order that PenTel owed PNB $21,116.40 for the open period is

either "clearly erroneous in view of the entire record as submitted" to this court, or "arbitrary and capricious." RCW 34.04.130(6)(e), (f). We apply those standards directly to the Commission's decision. *See Department of Ecology v. Ballard Elks,* 84 Wn.2d 551, 555, 527 P.2d 1121 (1974).

PenTel specifically challenges finding of fact No. 8 of the administrative panel, which states in part:

> Since September 27, 1969, PenTel has continued to bill its customers for their intrastate toll usage at statewide uniform toll rates but has kept all moneys so collected and has remitted no money to PNB. This has resulted in a net deficit in PNB revenues for the period September 7, 1969 to August 14, 1970 of $21,116.57 [*sic*].

In reaching the amount of $21,116.40, the Commission accepted testimony of PNB that this amount would have been due them if the prior agreement between PenTel and PNB had been in effect. During the open period, approximately 20 independent phone companies in Washington accomplished revenue separations based on individual cost studies of their own operations. PenTel was one of these companies.

With the exception of PenTel, all companies in this class settled with PNB on the basis of the Charleston Plan, employing the composite PNB rate of return. The Commission's ruling operates to treat PenTel the same as other independents of its class. This determination was consistent with RCW 80.36.180, which provides, in pertinent part:

> No . . . telephone company shall . . . by any special . . . method . . . receive from any . . . corporation a greater or less compensation for any service rendered . . . with respect to communication by . . . telephone or in connection therewith . . . than it . . . receives from any other . . . corporation for doing a like and contemporaneous service with respect to communication by . . . telephone under the same or substantially the same circumstances and conditions.

In view of RCW 80.36.180, we are convinced the Commission acted properly in employing the Charleston Plan to

divide revenues during the open period, and the decision to use that method was neither "clearly erroneous" nor "arbitrary and capricious".

The next question is whether the amount of $21,116.40 is the correct computation when employing the Charleston Plan.

Testimony at the hearing stated the figure of $21,116.40 "was computed in accordance with [the Charleston Plan]". Although the detailed computations were not submitted to the hearing panel, the Commission was free to conclude this was the proper amount. No contrary evidence was brought forward by PenTel to contradict the testimony that $21,116.40 was the result of proper calculations. Accordingly, the Commission ruling that PNB is entitled to payment of $21,116.40 from PenTel is hereby affirmed.

PenTel's final contention is that the Commission exceeded its authority by exercising jurisdiction over both intrastate and interstate toll revenues. It maintains the Commission has no jurisdiction over interstate toll revenues.

However, at no time in the proceedings did PenTel contend interstate toll revenues were involved. PNB's complaint specified the action was directed only toward intrastate toll revenues. The Commission specifically found only intrastate toll revenues were involved, and conclusion of law No. 2 states:

> To achieve the most just, reasonable and equitable division of *intrastate* joint toll revenues, this Commission should direct that settlements between PNB and PenTel for the period of September 7, 1969 to August 15, 1970, be made on the basis of paragraph IV(d) of the November 14, 1962 "Charleston Plan" type traffic agreement, and this Commission should determine the correct sum for that period based on paragraph IV(d) in the sum of $21,116.40, and without interest thereon.

(Italics ours.)

■ This conclusion went unchallenged both at the administrative hearing and also at the appeal in Thurston County Superior Court, and is not properly before this

court. The only "evidence" on the matter is two letters from the parties filed with the clerk of this court prior to oral argument. This is not sufficient.

PNB is entitled to the full award and there is nothing in the record to support the contention that the Commission did not have full authority to consider the separation of all the revenue brought to its attention. The Commission's ruling is affirmed.

WRIGHT, C.J., and ROSELLINI, HAMILTON, STAFFORD, UTTER, BRACHTENBACH, HOROWITZ, and HICKS, JJ., concur.