[No. 18663.  *En Banc.*  August 7, 1924.]

## NORTHWESTERN NATIONAL INSURANCE COMPANY *et al.,* Appellants, v. H. O. FISHBACK, *as Insurance Commissioner of the State of Washington, Respondent.*[1]

CONSTITUTIONAL LAW (113)—INSURANCE (9)—EQUAL PROTECTION OF THE LAWS—CLASS LEGISLATION—REGULATION OF BUSINESS—LIMITATION ON NUMBER OF INSURANCE AGENTS—LICENSE. Laws 1923, p. 57, § 2 [Rem. 1923 Sup., § 7088], providing that fire insurance companies shall have no more than one agent in cities of less than 50,000 inhabitants, and no more than two agents in larger cities, denies the equal protection of the laws and takes property without due process of law, in violation of Const., Art. 12, § 5, and the 5th and 14th amendments to the Federal constitution; since it deprives citizens of the right to engage in a lawful calling, without any reason or any reference to the public morals, health, safety or welfare (PARKER, FULLERTON, and MITCHELL, JJ., dissenting).

Appeal from a judgment of the superior court for Thurston county, Wilson, J., entered April 3, 1924, affirming, upon appeal from the state insurance commissioner, the denial of plaintiff's application for an insurance agent's license, after a trial on an agreed statement of facts. Reversed.

*Guy E. Kelly* and *Thomas MacMahon,* for appellants.

*The Attorney General* and *E. W. Anderson, Assistant,* for respondent.

MACKINTOSH, J.—The legislature in 1923 amended the insurance code by ch. 26 of the session Laws of 1923, p. 57, § 2 [Rem. 1923 Sup., § 7088], which provides that no insurance company, writing fire or automobile insurance, shall have more than one agent in any city of this state having a population of 50,000 or

[1]Reported in 228 Pac. 516.

less, or more than two agents in cities of over 50,000 inhabitants ;.and other parts of the insurance code provide that the insurance commissioner shall issue a license to insurance agents, which license shall be revoked in the event the agent conducts his business in a dishonest manner or misrepresents the policies of other agents or is guilty of conduct injurious to the public or those dealing with him.

This action is to determine the constitutionality of that portion of the act of 1923 which prohibits more than one agent of any company in any city having 50,000 or less people, or more than two agents in any city of over that population, it being the claim of the appellant that the act is in conflict with § 5, article 12, of the state constitution, and the fifth amendment and § 1 of the fourteenth amendment to the constitution of the United States.

The facts are that the Northwestern National Insurance Company is a fire insurance company, organized under the laws of the state of Wisconsin, which for many years has been authorized under the laws of this state, and the permits of the state insurance commission, to write policies of fire insurance in the state of Washington. The appellant Van R. Ferrell has, for sixteen years, been engaged in the insurance business in the city of Tacoma, which is a city of over 50,000 population, as agent for many fire insurance companies; and,.for the purpose of transacting that business, he maintains an office in that city. He has been an agent of the Northwestern National Insurance Company since January 1, 1922, and upon his application for a license no objection was made by the respondent insurance commissioner of this state as to his qualifications, or of his character, or the manner in which he conducted his business. In October, 1923, Ferrell made

application in the manner and upon the forms provided by the insurance commissioner, and asked that an agent's license be granted him to represent the Northwestern company as agent in the city of Tacoma, which at that time had already two agents in that city. The application of appellant for the license was refused on that ground, the respondent taking the position that he was precluded from issuing the license by the provisions of the law to which we have referred.

The question is whether the portion of the act under consideration denies to appellant the equal protection of the law and deprives him of his property without due process of law.

At the outset it is to be remembered that the occupation of insurance agent is a lawful business, and not one which it is within the power of the state to prohibit; and, as is conceded by the respondent's attorneys, any individual has an inherent right to follow an ordinary lawful calling, and the deprivation of that right would be the taking of property without due process; and that the right to contract for one's services in a lawful calling is a right guaranteed by the constitution; and that, under the constitution, every individual is entitled to all privileges and immunities granted to those similarly situated. It is contended, however, that the insurance business is not such an ordinary private business that it may not be regulated in accordance with the needs of public welfare; and it may be conceded that the courts have held that the insurance business is thus subject to legislative regulation. *German Alliance Insurance Co. v. Lewis,* 233 U. S. 389; *National Union Fire Ins. Co. v.. Wanberg,* 260 U. S. 71, 67 Law Ed. 62.

·But we do not acquiesce in the view that, because the insurance business may be subject to supervision, that

it is any less a private business. It is true that the business is one in which a great many members of the public are interested, but this is true of nearly every business which occurs to mind. The public interest in the insurance business is no greater than the public interest in the practice of medicine, dentistry, law, and the sale of groceries, drugs, wearing apparel, and the conduct of every human activity which supplies the wants or desires of men and women. It may be that, in the public interest, these various professions and commercial activities can be made subject to regulatory legislation, but such regulation must, of course, be reasonable.

The right of every individual to engage in any lawful business cannot be prohibited, unless that prohibition is based upon some condition existing in the business which the court finds to be interfering with the public morals, health, safety or welfare. *State v. Tanner*, 244 U. S. 590. In the instant case, there is no question that the legislation is not protective of the public morals, health or safety, and the only question is whether it has any reasonable relation to public welfare. It has been held that the business of writing insurance may be regulated. *German Alliance Insurance Co. v. Lewis, supra.* But the contract of the agent with the company is not a contract which affects the public generally as does the business of insurance. The right to regulate the insurance business was sustained only as to those matters which affect the general public, and the general public is not concerned with the number of agents which the insurance company may employ.

In *La Tourette v. McMaster*, 248 U. S. 465, a state statute was sustained which provided that insurance brokers should be agents both of the company and the insured and should be residents of the state in which they write insurance. But the basis of that decision

was that it was a lawful regulation to require the agent to be a resident of the state in which he wrote insurance, where he could be under the jurisdiction of the state officials and such a regulation is reasonable.

But the act of 1923 is not an attempt to regulate the insurance business. It is, in effect, nothing more than the creation of a favored class, who are permitted to engage in the lawful business of acting as insurance agents to the exclusion of every one else from that business; and this excludes a great number of persons who, from time immemorial, have acted as insurance agents. We all know that real estate agents, lawyers and persons following many other lines of business, have been accustomed to write insurance as a "side line." We cannot but feel that the legislature had in view no welfare of the public, but that this legislation is an attempt to monopolize the business of writing insurance. We agree with what the supreme court of Missouri, in *Moler v. Whisman,* 243 Mo. 571, 147 S. W. 985, 40 L. R. A. (N. S.) 629, said in holding unconstitutional a law passed in the interest of barbers:

"Possibly some barbers, like some lawyers and other persons who have obtained successful and remunerative positions in professional and commercial life, become anxious to shut out competition by 'burning the bridges behind them,' so to speak; but such a scheme is entirely un-American, because it is the policy of a free commonwealth to encourage thrift and industry among its citizens, and to keep the door of opportunity ajar so that every qualified and deserving person who so desires may enter thereat."

This court has heretofore, in *State ex rel. Schafer v. Spokane,* 109 Wash. 360, 186 Pac. 864, quoted with approval the following from *Ex parte Dickey,* 76 W. Va. 576, 85 S. E. 781, L. R. A. 1915F 840:

"The right of a citizen to pursue any of the ordinary vocations on his own property and with his own means,

can neither be denied nor unduly abridged by the legislature, for the preservation of such right is the principal purpose of the Constitution itself. In such cases, the limit of legislative power is regulation, and that power must be cautiously and sparingly exercised, unless the business is of such character as places it within the category of social and economic evils, such as gaming, the liquor traffic, and numerous others. To this list may be added such useful occupations as may, under certain circumstances, become public or private nuisances, because offensive or dangerous to health. All of these fall within the broad power of prohibition or suppression, some wholly and absolutely and others conditionally. Such pursuits as agriculture, merchandising, manufacturing and industrial trades cannot be dealt with at will by the legislature. As to them, the power of regulation is comparatively slight when they are conducted and carried on upon private property and with private means. But when a citizen claims a private right in public property, such as a street or a park, a different situation is presented. Such properties are devoted primarily to general and public, not special or private, uses, and they fall within almost plenary legislative power and control. In them, all citizens have the usual and ordinary rights in an equal degree and to an equal extent. In the regulation thereof, the legislature cannot discriminate.''

Authorities might be multiplied until the perusal of them would become exhausting, to the effect that, in any of these matters, where the legislature is interfering with lawful business, the interference must have some fundamentally sound reason back of it. No such has been suggested in support of this legislation. The act itself, unlike most acts in the later years, attempting to prescribe restrictions on human endeavor, contains no statement of its high and lofty purpose and it is left to conjecture and the limited field of judicial knowledge to create some theory upon which can be predicated the reasonableness of this statute.

It is, as we have already said, not a statute which has anything to do with the regulation of the insurance business, so that the insured may not be imposed upon and shall at all times receive fair and equitable treatment; it is merely an interference with what has always been one of the ordinary businesses engaged in by whoever saw fit to do so; it prescribes no mental or moral qualifications, establishes no standard of conduct or experience, leaves the selection of the agents entirely within the discretion of the insurance company and does nothing in the way of promoting public welfare, but does afford a splendid opportunity for the private gain of a few. A regulation might be well conceived as promotive of the public welfare which provided that, before a person could act as an insurance agent, he must possess certain qualities of mind or character, but here we have nothing of that sort. The unfit, the unscrupulous, the dishonest and rapacious agent may be appointed; and the experienced, honest and deserving who have devoted a lifetime to their business may be excluded, for no other reason than that in their community the quota is already filled.

The record in this case shows that appellant Ferrell is in every way qualified to act as an agent, and that he is denied a license merely because in his community two other agents have already received their licenses. The statute is unreasonable, and is therefore violative of the appellant's constitutional rights, and the judgment which is appealed from is reversed.

MAIN, C. J., BRIDGES, TOLMAN, HOLCOMB, and PEMBERTON, JJ., concur.

PARKER, J. (dissenting)—I dissent from the conclusion reached in the foregoing opinion. I think the claimed rights of appellant Ferrell are of no consequence in our present inquiry. To my mind, the real

constitutional question here involved is as to the right of the insurance company to have a greater number of agents in a given city, town or district than is prescribed by the act. I fail to see in what manner Ferrell's constitutional rights are in the least involved. He has no constitutional right to enter into an agency or any other contract with the insurance company which that company does not have power to enter into. As a regulatory measure prescribing the powers of the insurance company, I am strongly of the opinion that the act is constitutional. As to the reasonableness of the regulation and the possible purpose of the legislature in enacting it, it is worthy of note that the word "agent," as defined by the express terms of the act, is an agent who is

"duly authorized and commissioned by an insurance company, to solicit applications for and effect insurance in the name of the company, and to keep a complete record of all such transactions, and to discharge such other duties as may be vested in or required of the agent by said insurance company;"

and further, that there is no restriction in the act upon the number of solicitors who may be employed under such agent; express provision being made for the employment of such solicitors. For the purpose of investigation and facilitating the keeping in touch with the business of insurance companies by the state insurance commissioner, the legislature may have had in view the thus curtailing of the number of record insurance agencies. Surely, it cannot be said that this is an undue restriction upon the rights of or interference with the business of insurance companies.

FULLERTON, J. (dissenting)—I concur in what is said and in the conclusion reached by Judge Parker.

MITCHELL, J., concurs with FULLERTON, J.