[No. 34338. *En Banc.* July 17, 1958.]

*In the Matter of the Revocation of the License to Practice Dentistry of* HARRY V. FLYNN.[1]

[1]Reported in 328 P. (2d) 150.

*Theodore P. Cummings*, for appellant.

*The Attorney General, Ernest Furnia* and *Roy C. Fox, Assistants*, for respondent.

*Hall, Cole & Lawrence* and *Peter B. Walton, amici curiae.*

FINLEY, J.—Dr. Harry V. Flynn, a licensed dentist, practicing in the state of Washington, is charged in the instant case with unprofessional conduct. He was given a statutory administrative hearing (RCW 43.24.110), at which he was represented by counsel. The administrative hearing board found that Dr. Flynn was guilty of three counts of unprofessional conduct. Based upon this, the director of licenses of the state of Washington issued an order revoking Dr. Flynn's license to practice dentistry. Dr. Flynn appealed to the superior court, which heard the cause upon the record made before the administrative hearing board.

A review of the record reveals the following sequence of events in the superior court. On May 23, 1956, the trial judge rendered a memorandum opinion in which he stated that none of the charges against Dr. Flynn was supported by substantial and competent evidence; and he stated that he would reverse the order of the director of licenses. On August 6, 1956, the trial judge rendered a second memorandum opinion. Therein, he stated that only one of the three charges of unprofessional conduct against Dr. Flynn was supported by the record made before the board, stating furthermore that he would remand the case for imposition of a penalty for that one act of unprofessional conduct.

On August 31, 1956, the board, including the director of licenses as chairman, issued a supplemental order, stating that the one count which had been sustained by the superior court was a sufficient basis for revoking Dr. Flynn's license, and again ordered his license revoked. On December 6, 1956, the trial judge rendered his third memorandum opinion. In it, he stated that the board was without jurisdiction to enter its supplemental order of August 31, 1956, because the case, formally, had not been remanded to the board. The trial judge granted a motion to strike the supplemental order.

On March 29, 1957, the trial judge rendered his fourth and last memorandum opinion, and on April 29, 1957, he entered findings of fact, conclusions of law, and judgment in accordance therewith. He found that only one of the three charges was sustained by substantial and competent evi-

dence—that Dr. Flynn had employed an unlicensed dentist "to do and perform a dental operation on the mouth and teeth of one William B. Curley," in violation of RCW 18-.32.230 and RCW 18.32.350. The trial judge called attention to the severity of the penalty, but stated that, since one of the counts was supported by the record, he did not believe he had authority to do anything other than to affirm the order of the director of licenses.

The first question presented on this appeal—the meaning of the word *de novo* as used in the statute granting the right to appeal to the superior court—was determined adversely to appellant's contentions in *In re Harmon* (1958), *ante* p. 118, 323 P. (2d) 653.

It remains to be determined whether the penalty imposed is arbitrary and capricious or contrary to law. In considering this matter, we do not think that it is sufficient to look merely at the words of the statute and their literal meaning. It is important to determine whether the legislature, constitutionally, could provide that a dentist's license should or could be revoked if he employed an unlicensed dentist *under the circumstances of the instant case.*[2] In *In*

[2]The constitutional protections afforded through the application of due process standards are certainly not limited to the matter of property rights. It is readily apparent from the field of criminal law that due process considerations apply to areas of the law strictly involving questions of deprivation of "human rights" or "personal rights." There should be no question, therefore, that due process considerations apply to the field of licensing, which involves, at the very least, quasi-property rights. (*Cf. Schware v. Board of Bar Examiners of New Mexico, supra.*)

In *State v. Cater's Motor Freight System* (1947), 27 Wn. (2d) 661, 179 P. (2d) 496, this court said:

"*The purpose of the constitutional guaranty of due process of law is to protect the individual from the arbitrary exercise of the powers of government.* However, if a statute provides penalties for noncompliance with an administrative order, and such penalties are not in such amounts as to be prohibitive, and a reasonable opportunity is given to test such penalties in a proper hearing, due process has not been defeated.

" '*The imposition of severe or excessive penalties may violate the due process guaranty,* especially if access to the courts to test the constitutional validity of a commission's orders is denied, if the right of review actually given is one of which a carrier may avail itself only at the risk of having to pay such penalties if the order is found to be valid, or if the penalized acts had the supposed sanction of the law. *A reason-*

*re Kindschi* (1958), *ante* p. 8, 319 P. (2d) 824, we pointed out that the United States supreme court has indicated that the principles of due process and equal protection apply to proceedings regarding the licensing of lawyers. We quoted two paragraphs from a recent supreme court opinion (*Schware v. Board of Bar Examiners of New Mexico* (1957), 353 U. S. 232, 1 L. Ed. (2d) 796, 77 S. Ct. 752) as evidence of that court's attitude on problems in this area of the law:

"A State cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment. . . . [citing cases]. A State can require high standards of qualification, such as good moral character or proficiency in its law, before it admits an applicant to the bar, but any qualification must have a *rational connection with the applicant's fitness or capacity to practice law.*" (Italics ours.)

"We need not enter into a discussion whether the practice of law is a 'right' or 'privilege.' *Regardless of how the*

*able penalty will be sustained.* A state, however, has power to impose a punishment heavy enough to secure obedience to administrative orders of a state commission after they have been found to be lawful and to impose a penalty for acts of disobedience committed after ample opportunity to test the validity of such orders and failure to do so.' . . . ." (Italics ours.)

In *Brown v. Seattle* (1928), 150 Wash. 203, 272 Pac. 517, the court said:

"Regulatory legislation attempting to control a lawful business which does not fall within the objectionable or prohibitable classes, and which is conducted upon private property, must be *reasonably* adapted to promote the public health and general welfare in some particular manner, and must tend to prevent some existing or directly anticipated menace thereto. What is a reasonable exercise of the police power under these circumstances depends largely upon the nature or character of the undesirable conditions to be overcome or prevented. *Whyte v. City of Sacramento*, 65 Cal. App., 534, 224 Pac. 1008. *There must also be some logical connection between the object sought to be accomplished by the legislation and the means prescribed to accomplish such purpose.*" (Italics ours.)

For other cases applying substantive due process standards see: *Patton v. Bellingham* (1934), 179 Wash. 566, 38 P. (2d) 364, 98 A. L. R. 1076; *Manos v. Seattle* (1933), 173 Wash. 662, 24 P. (2d) 91; and *Northwestern Nat. Ins. Co. v. Fishback* (1924), 130 Wash. 490, 228 Pac. 516, 36 A. L. R. 1507.

*State's grant of permission to engage in this occupation is characterized, it is sufficient to say that a person cannot be prevented from practicing except for valid reasons.* Certainly the practice of law is not a matter of the State's grace. *Ex Parte Garland,* 4 Wall. 333, 379." (Italics ours.) *Schware v. Board of Bar Examiners of New Mexico, supra,* Footnote.

Is there a "rational connection" between the acts giving rise to the revocation of Dr. Flynn's license to practice and his fitness or capacity to practice dentistry so as to constitute a "valid reason" for revoking his license? If this question is answered in the negative, it makes no difference if the penalty was within the literal words of the statute—because, as we view the matter, the law *as so applied or interpreted* would violate the due process and equal protection clauses of the Federal constitution.

In order to answer the due process question, we shall examine Dr. Flynn's conduct. What did he do? On substantial evidence, the administrative committee found that he permitted Paul Holbrook, a dentist not then licensed to practice in this state, to fill a cavity in a patient's mouth. This fits the literal wording of the statute, but it is not the whole story. Mr. Holbrook was a graduate of an accredited dental school; he was licensed to practice in at least one other state; he is now licensed to practice in Washington, and, *at the time in question, he was employed by the state of Washington as a dentist* in the Firland Sanitarium. Taking all of these additional factors into consideration, is Dr. Flynn's action in allowing Mr. Holbrook to fill a cavity in a patient's tooth a "valid reason" for revoking his license?

A basic purpose for the licensing of dentists is to protect the public from incompetent and untrustworthy dentists. Therefore, it is appropriate and necessary that Dr. Flynn's conduct be examined with this in mind.

No question has been raised as to Dr. Flynn's competency in dental skills. The question then is whether his conduct evidences such untrustworthiness as to constitute a valid reason for revoking his license. We believe that in the present case such untrustworthiness could be shown through

(a) the hiring of an incompetent employee or (b) the willful violation of the licensing laws.

The fact that Mr. Holbrook was not licensed in this state when he worked for Dr. Flynn is *prima facie* evidence that the state did not consider him to be competent. But this inference must be held to be rebutted by the uncontradicted evidence that the state thought him competent enough to work for it in the Firland Sanitarium. There is no evidence in the record tending to prove that the work Mr. Holbrook performed on Mr. Curley's teeth was not competently done; nor does the record reveal any harm or danger to the patient as a result of Mr. Holbrook's services. Upon these facts, there is no basis for concluding that Dr. Flynn hired an incompetent employee and so evidenced such untrustworthiness as to constitute a "valid reason" for revoking his license.

There is another aspect to untrustworthiness involved in this case, however. The maintenance of the integrity of the licensing system is important, if the purpose of the licensing system is to be achieved. Even a technical violation of the licensing laws evidences some degree of untrustworthiness. In *In re Kindschi, supra,* we said that "a willful and intentional attempt to avoid payment of all or a part of one's income tax with intent to defraud the government" evidenced untrustworthiness to practice medicine. We believe that the key words are *willful* and *intentional*. If a licensed dentist willfully and intentionally flaunts the licensing laws by hiring a nonlicensed dentist, we believe he demonstrates such untrustworthiness as to constitute a "valid reason" for revoking his license. On the other hand, if a licensed dentist inadvertently or negligently employs a nonlicensed dentist in violation of the statute, we do not believe that his conduct indicates a state of mind which should be characterized as such untrustworthiness so as to constitute a "valid reason" for revoking his license and tossing him out of his profession.

Even the inadvertent or negligent hiring of a nonlicensed dentist is reprehensible and a proper subject for dis-

ciplinary proceedings in order to prevent its repetition by the licensed dentist and to maintain the integrity of the licensing system. But revocation of a license is much like the death penalty in criminal law—it is not imposed to reform the particular person involved.

In this case, Dr. Flynn was not charged with willfully violating the license laws by knowingly hiring an unlicensed dentist. The administrative committee did not find that he willfully and intentionally hired a nonlicensed dentist. The record does not indicate either actual or constructive intent on Dr. Flynn's part to hire a nonlicensed dentist. He obtained Mr. Holbrook's name through a dental supply house, and he checked with the Firland Sanitarium.

On the basis of the record before us, we believe that the only defection proved against Dr. Flynn is that he inadvertently hired a nonlicensed dentist in violation of the literal wording of the statute. We do not believe that there is a "rational connection" between this particular defection or conduct and his fitness or capacity to practice dentistry. In view of this, it then follows that the legislature could not, constitutionally, have provided that his license be revoked for such conduct. *Schware v. Board of Bar Examiners of New Mexico, supra.* A statute is to be construed so as to render it constitutional. *Household Finance Corp. v. State* (1952), 40 Wn. (2d) 451, 244 P. (2d) 260. It follows that the penalty imposed is in excess of the authority of the act, and is contrary to law. We have no authority to substitute our judgment for that of the director of licenses in respect to the disciplining of members of the dental profession for unprofessional conduct. Our jurisdiction is limited to determining whether the action taken by the director followed the statute and met due process constitutional standards. See *In re Kindschi, supra.*

The judgment should be reversed with directions to remand the case to the director of licenses for the imposition of an appropriate disciplinary penalty. It is so ordered.

WEAVER, ROSELLINI, FOSTER, and HUNTER, JJ., concur.

MALLERY, J. (dissenting)—Dr. Harry V. Flynn was a li-

censed dentist practicing in the state of Washington. He was charged with unprofessional conduct by reason of violating RCW 18.32.230 [*cf.* Rem. Rev. Stat. (Sup.), § 10031-8] and RCW 18.32.350 [*cf.* Rem. Rev. Stat. (Sup.) § 10031-18, part].

The matter came on for hearing, June 24, 1955, before the administrative hearing committee appointed by the governor of the state of Washington. On August 1, 1955, upon the recommendation of the committee, the director of licenses entered an order revoking the license in question.

The licensee appealed to the superior court, which heard the cause upon the record made before the administrative hearing committee.

The trial court found that finding of fact No. 4 of the administrative hearing committee was sustained by competent evidence. It was:

"That on or about the second day of February 1955, said Harry V. Flynn operated a dental office located at 1504 First Avenue, Seattle, Washington, and did employ therein one Paul Holbrook, an unlicensed dentist, to do and perform a dental operation on the mouth and teeth of one William B. Curley."

From that finding of fact, the court concluded

"That the appellant Harry V. Flynn was found guilty upon sufficient competent evidence of a violation of RCW 18.32.230 (5) (7), and that the order of the Director of the Department of Licenses revoking the license of Harry V. Flynn to practice dentistry in the State of Washington must be sustained and the appeal dismissed, and the Court may not reverse the hearing committee on a matter of discretion."

The court felt that the penalty was severe, but sustained the order of the director of licenses for lack of authority to alter it since it was not arbitrary or capricious.

The appellant concedes that the record sustains the finding of fact upon which the trial court relied, and that some disciplinary action is appropriate, but contends, upon appeal, that the penalty is not the penalty which the court would have imposed had the appellant been accorded a trial *de novo* as provided by the statute.

The appeal statute, RCW 18.32.270 [*cf.* Rem. Rev. Stat. (Sup.), § 10031-9, part], provides:

"The revocation or suspension of a license shall be in writing signed by the director, stating the grounds upon which such order is based and the aggrieved person shall have the right to appeal from such order within fifteen days after a copy thereof is served upon him, to the superior court of Thurston county, which shall hear the matter de novo. In such appeal the entire record shall be certified by the director to the court, and the review on appeal shall be confined to the evidence adduced at the hearing before the director."

The appellant contends that a trial *de novo*, as contemplated by the statute, authorizes and requires the trial court to enter its own judgment based upon the facts found from an examination of the record made before the administrative hearing committee. This is predicated upon the theory that the right to practice dentistry is a property right, and that a proceeding to revoke it is judicial rather than administrative in nature. Appellant, therefore, claims he has not had due process of law and seeks a remand of the cause to the trial court for its own judicial imposition of the appropriate penalty.

The licensing of dentists is an exercise of the police power for the protection of the public against incompetent practitioners. The license to practice dentistry is a privilege, not a property right. The granting or restricting of such a privilege is a legislative and administrative function. *In re Harmon, ante* p. 118, 323 P. (2d) 653. This being so, the judicial function is discharged by reviewing the action of the administrative hearing committee to determine if it was arbitrary and capricious, or contrary to law. *Household Finance Corp. v. State*, 40 Wn. (2d) 451, 244 P. (2d) 260.

The trial court was correct in determining that the penalty was not arbitrary and capricious, since it was within the limits prescribed by law and predicated upon competent evidence in violation of the statute.

41 Am. Jur., Physicians and Surgeons, 174, § 47, states, *inter alia*:

"As·has been seen, there is, in most respects, no real distinction between refusing to grant a license and the revocation of one which has been granted, and it is within the police power of the state to delegate to the same body or tribunal which it has empowered to grant licenses the power to revoke them and to vest such tribunal with the power to investigate and try charges for the revocation of a license. Such a delegation is consistent with the constitutional guaranty of due process of law. The power conferred upon a state board to revoke a physician's license for cause is a discretionary and administrative, and not a judicial, function."

In State Board of Medical Registration and Examination v. Scherer, 221 Ind. 92, 46 N. E. (2d) 602, the court said:

"The granting and revocation of licenses to engage in trades, businesses, or professions is a ministerial function. Ministerial boards act as fact-finding bodies to ascertain whether applicants conform to a legislative formula by which the right to a license is fixed. It is well settled that under the division of powers, these ministerial fact-finding duties may not be delegated to courts, and that the so-called appeal provisions of statutes which undertake to vest in courts jurisdiction to try and determine de novo the facts entitling an applicant to a license, or to continue to operate under a license, must be treated as merely providing procedure by which the proceeding may be brought before the court for an investigation to determine whether the ministerial body has acted legally and within its powers. In all of such cases, if the ministerial board has conformed to statutory procedural methods, and its decision is supported by substantial evidence, its findings and determination will not be disturbed. [Citing cases.] It is true that the statute here in question seems to contemplate a de novo proceeding before the court, and a finding of 'guilty' or 'not guilty,' but, regardless of what may seem a legislative intention to the contrary, this court has consistently construed similar statutes as vesting in the courts only such jurisdiction as the Constitution permits.

". . . the only jurisdiction of the court was to review the decision of the board, . . ."

The order should be affirmed.

The appellant concedes his guilt, but he is shopping around for an easier penalty. His sole contention upon

appeal is that the *court itself* should assess the penalty in a trial *de novo*. The majority opinion properly holds, in effect, that the court has no such power and upholds the right of the director of licenses to exercise *his* discretion. Having gone that far, this court was then logically bound to affirm the trial court. No one has ever contended that the record does not establish the violation or that the penalty imposed is not within the limits prescribed by law. The gist of the majority opinion is its agreement with the appellant that the penalty imposed was too severe. The device the majority hits upon to lessen it is to send the case back to the director for him to exercise his discretion all over again. Obviously, there is no point in this unorthodox procedure, unless they intend to continue to do so until the director has exercised his discretion the way the majority want him to.

The labored explanation of the attempt to do indirectly what a court cannot do directly is predicated upon the theory that, while the appellant is guilty enough to be penalized, he is only a little bit guilty, and, hence, this court is justified in procuring a lighter penalty for him by any means—even that of invading the administrative branch of government by telling it how to exercise its discretion.

The charge of *employing an unlicensed dentist* is the only one before the court. The reasons given for holding that the appellant is only a little bit guilty of *employing an unlicensed dentist* are set out *in extenso* in the majority opinion. Upon the specific charge in question, they amount to this:

(1) The appellant himself has not been proven to be an incompetent dentist. This is obviously irrelevant.

(2) The unlicensed dentist he employed has not been proven to be incompetent. This is equally irrelevant.

(3) The unlicensed dentist has not been proven to have injured anybody. This was, of course, not in issue and naturally the record is silent upon it.

(4) The appellant was *not charged* with having *willfully* hired an unlicensed dentist, hence, he did so inadvertently. This is an obvious *non sequitur*.

(5) A law imposing a penalty for employing a dentist who is unlicensed is unconstitutional, because there is no "rational connection" between *employing* an unlicensed dentist and *being* a competent dentist. If this were a cogent argument, it would preclude any penalty at all. None of this excusatory matter is sound or relevant to the issue herein.

I dissent.

DONWORTH and OTT, JJ., concur with MALLERY, J.

HILL, C. J. (dissenting)—I concur in the result of the dissent. The trial court should be affirmed.

[1]Reported in 328 P. (2d) 160.