[No. 10465-2-II.   Division Two.   February 10, 1988.]

MARC R. TOMLINSON, *Appellant*, v. THE STATE OF WASHINGTON, ET AL, *Respondents*.

---

[5]The same can be said for Devlin's actions, if they should be found negligent by the fact finder.

*Marilyn W. Schultheis, Jeffrey F. Hale,* and *Rosenow, Hale & Johnson,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Winslow Whitman, Assistant,* for respondents.

ALEXANDER, J.—Dr. Marc Tomlinson appeals an order of the Thurston County Superior Court affirming the Washington State Dental Disciplinary Board (Board). The Board suspended Tomlinson's license to practice dentistry, finding that he was grossly incompetent in his dental practice and, consequently was guilty of unprofessional conduct. Tomlinson asserts on appeal that several of the Board's findings of fact are clearly erroneous, that the Board erred in failing to admit certain evidence, and that the penalty imposed by the Board was contrary to law and arbitrary and capricious. We affirm the Board's order in all respects.

In May 1986, the Board held a hearing to determine whether Dr. Tomlinson had been guilty of unprofessional conduct in an incident that occurred a year before the hearing. The record before the Board revealed the following:

On April 29, 1985, Laurie Shortt, a regular patient of Dr. Tomlinson, went to see Tomlinson because her wisdom teeth were causing her pain. Tomlinson determined that it was necessary to extract Laurie's wisdom teeth. He gave her a prescription for presurgery medication, and told her to take the medication and return to his office later that day.

When Laurie returned to the office, Tomlinson's dental assistant administered novocaine injections to Laurie. Tomlinson gave Laurie a sedative intravenously. He then pulled her wisdom teeth.

Tomlinson's medical notes reflect that after the surgery, Laurie was "hard to awaken, very groggy and unresponsive." His notes also revealed that he administered oxygen and a stimulative in order to revive her.

According to Tomlinson, Laurie improved rapidly. He said that he observed her for a few minutes and then walked her down the hall to another dental chair. Tomlinson said that he then telephoned Laurie's mother, Mrs. Shortt, to come pick up Laurie. When Mrs. Shortt arrived, Tomlinson helped her and Laurie's sister, Sue Marable, put Laurie into Mrs. Shortt's car. Tomlinson then followed them to the Shortt home and helped them place Laurie on

the living room sofa. Tomlinson gave Mrs. Shortt his telephone and number and left, apparently believing that Laurie was recovering normally.

Tomlinson testified that when he called the Shortt's home later that evening to check on Laurie, he was told that she had been taken to the hospital. Tomlinson went to the hospital to check on Laurie and noted on her chart that she must have had an "idiosyncratic" reaction to the I.V. sedation. Tomlinson admitted that he did not report Laurie's hospitalization to the Board as required by WAC 308–37–1207.

Mrs. Shortt's version of the events differed somewhat. She testified that after Tomlinson called her to pick up Laurie, she arrived at the office accompanied by Sue. She said that she observed that Laurie was "very gray, perspiring, damp on her face, [and] clammy." Laurie, according to Mrs. Shortt, was unresponsive and "[h]er breathing was terrible." Mrs. Shortt observed that Laurie was "gasping, trying to get air." Mrs. Shortt claimed that Laurie appeared to be unaware of what was going on around her. She said that she asked Tomlinson if Laurie was all right, and, according to her, he repeatedly asserted that there was no problem.

Mrs. Shortt testified that Tomlinson then helped carry Laurie to the car. Tomlinson followed Mrs. Shortt and Sue to the Shortt home and helped carry Laurie to the sofa. Mrs. Shortt said that she expressed concern to Tomlinson about Laurie's breathing, but that Tomlinson said that Laurie would "sleep it off."

Finally, Mrs. Shortt testified that after Tomlinson left, Sue, who was a nurse, took Laurie's blood pressure and found it to be very low. Mrs. Shortt called the paramedics who arrived at the Shortts' home shortly thereafter.

A paramedic testified that the medics found that Laurie had a respiratory rate of 4. According to the witness, a normal rate is 12 to 16, and anything under 10 calls for assistance. The paramedic opined that Laurie "was close to death at that time," so they transported her to the hospital.

Laurie Shortt testified, but said that she did not remember anything from the time that she was given a sedative by Dr. Tomlinson until the next day when she awoke in the hospital.

Tomlinson attempted to introduce evidence concerning drug charges against Sue. Sue, whose evidence was presented by way of an affidavit, conceded that her nursing license had been suspended for 2 years because of drug charges. The Board did not admit the evidence offered by Tomlinson.

The Board also had before it an extensive resume of Tomlinson's background and several letters from other area dentists to the effect that Tomlinson was a caring and competent dentist.

Finally, Dr. Paul Wade, a dentist employed by the Consumer Protection Division of the Department of Licensing, testified that he investigated the incident and concluded:

> I consider it very inappropriate, that is, not reasonable and not prudent, to send home a patient so sedated that she had to be carried to the car, especially after the patient had to receive .04 mg of Narcan just prior to discharge. Such a degree of sedation mandates continuing observation by personnel who are trained in caring for heavily sedated patients. Sending home such a heavily sedated patient would expose the patient to an unacceptable [sic] high probability of continuing or recurrent respiratory depression, plus the possibility of respiratory obstruction by the tongue and soft tissues, even though the patient is still attempting to breathe.

At the conclusion of the hearing, the Board made findings of fact and concluded that Dr. Tomlinson was guilty of unprofessional conduct in that his conduct on this occasion constituted gross incompetency in the practice of dentistry. RCW 18.32.530. The Board ordered Tomlinson's dental license suspended for 5 years, the order to be effective 30 days after date of entry. The Board "stayed" all but 90 days of the license suspension, providing, however, that effective the date of the order, Tomlinson was not to

administer any intravenous sedatives for the entire 5–year period.

Some days later, Tomlinson administered a sedative intravenously to a patient. He then sent a letter to the Board admitting that he had done so, but claimed that he had misunderstood the Board's order. After the incident came to the Board's attention, it conducted a second hearing, at which Tomlinson claimed that he did not intentionally or willfully violate the order. The Board found that Tomlinson's conduct was not excusable in that it indicated a lack of "adequate respect for the authority of the board." The Board reduced the amount of the previously ordered stay. (This had the effect of increasing the unstayed period of Tomlinson's license suspension from 90 to 120 days).

Tomlinson appealed both orders to the Superior Court, which affirmed. Tomlinson appeals the Superior Court order to this court.

### FINDINGS OF FACT

Tomlinson asserts that the Board erred in entering several of its factual findings. We disagree.

■■ The scope of review of decisions of the Disciplinary Board is as set forth in RCW 34.04.130(6). This court's review is not of the superior court, but is applied directly to the record of the administrative tribunal. *Department of Ecology v. Ballard Elks Lodge 827,* 84 Wn.2d 551, 555, 527 P.2d 1121 (1974). Pursuant to RCW 34.04.130(6), findings of the Board may be reversed only if they are "clearly erroneous." A finding of fact is clearly erroneous when, based on the record before it, the reviewing court is "firmly convinced that a mistake has been committed . . ." *Department of Ecology v. Ballard Elks Lodge 827,* 84 Wn.2d at 555.

All of the findings to which Tomlinson assigns error survive a challenge that they are clearly erroneous. The Board's finding that Laurie was hard to awaken, very groggy and unresponsive, that she was left unconscious at

the Shortt home, and that death was imminent when emergency care was administered, finds support in Tomlinson's own medical notes, Mrs. Shortt's testimony, and the paramedic's testimony. Its finding that Tomlinson discharged a heavily sedated patient is buttressed by Mrs. Shortt's, Sue's, and Laurie's testimony that Laurie was unconscious when she was released by Dr. Tomlinson. The Board's finding that Tomlinson's resume and the laudatory letters from other dentists have no specific bearing on the allegations also is not erroneous in light of the fact that none of the letters dealt with an incident of the sort described in the evidence. The finding that no competent evidence supports Tomlinson's allegation that Laurie took drugs other than those prescribed before the surgery is not erroneous because the allegation finds absolutely no support in the evidence. The Board's finding that the record reflects no competent evidence that Tomlinson was the subject of animosity from Sue Marable also is not erroneous. No evidence to that effect was admitted.[1] Finally, the Board's finding that there was no evidence to show that Laurie suffered from allergies or unusual reactions to I.V. sedations is not erroneous because, again, no such evidence was introduced.[2]

### RULING ON EVIDENCE

Tomlinson contends that the Board erred in refusing to permit him to introduce evidence regarding Sue Marable's drug convictions. We find no error. Marable's affidavit, which was before the Board and considered in evidence,

---

[1]Tomlinson attempted, unsuccessfully, to introduce evidence that Sue's friends had burglarized Tomlinson's office and that Tomlinson's testimony had helped to convict the friends. He asserted that this evidence showed that Sue and the Shortt family were biased against him. He has not challenged the Board's refusal to admit the evidence.

[2]Tomlinson also assigns error to two of the Board's findings made at the time the Board entered its order extending the period of Tomlinson's license suspension to 120 days. Because we are reversing the trial court's order insofar as it increased the penalty, we need not discuss these assignments of error.

contains her admission that she was suspended from nursing because of her convictions. Any further evidence merely would have been repetitious, and the Board did not err in excluding it. RCW 34.04.100(1).

## CONCLUSIONS OF LAW

Pursuant to RCW 34.04.130(6), appellate court review of administrative decisions on questions of law is made on the record of the administrative tribunal. *Franklin Cy. Sheriff's Office v. Sellers,* 97 Wn.2d 317, 324, 646 P.2d 113 (1982), *cert. denied,* 459 U.S. 1106, 74 L. Ed. 2d 954, 103 S. Ct. 730 (1983). The appellate court conducts a de novo review of the administrative record, and it essentially may substitute its judgment for that of the administrative body. *Franklin Cy. Sheriff's Office,* 97 Wn.2d at 325. However, this court must give due deference to the knowledge and expertise of the Board. *Washington Med. Disciplinary Bd. v. Johnston,* 99 Wn.2d 466, 483, 663 P.2d 457 (1983).

■ The Board's action also may be reversed if its action is arbitrary and capricious. Arbitrary and capricious action is "willful and unreasoning action, without consideration and in disregard of facts and circumstances." *Zoutendyk v. Washington State Patrol,* 27 Wn. App. 65, 72, 616 P.2d 674 (1980), *aff'd,* 95 Wn.2d 693, 628 P.2d 1308 (1981). "Where there is room for two opinions, action is not arbitrary and capricious even though one may believe an erroneous conclusion has been reached." *Zoutendyk,* 27 Wn. App. at 72.

Tomlinson argues that the Board erred in concluding that the laudatory letters from other dentists and evidence of Marable's animosity toward Tomlinson did not mitigate against the penalty. Under the standard of review set forth in *Franklin Cy. Sheriff's Office v. Sellers, supra,* the Board's conclusions are supported by the findings that the letters have no bearing on the issues, and that the evidence reflects no indication of animosity toward Tomlinson by Sue. There was no error.

■ Tomlinson contends the Board erred in concluding that his failure to know about WAC 308–37–120, which

requires a dentist to report any hospitalization of a patient to the Board, does not excuse his failure to comply with the regulation. We fail to see how Tomlinson was harmed by the conclusion, even if incorrect, because the conclusion does not appear to have been considered by the Board as support for the imposed penalty. However, even if the conclusion did influence the degree of penalty, the Board did not err because, in order to maintain the integrity of the licensing system, a dentist may be disciplined for a negligent or inadvertent violation of the licensing laws. *See, e.g., In re Flynn,* 52 Wn.2d 589, 595–96, 328 P.2d 150 (1958).

Tomlinson assigns error to the Board's conclusion that his conduct constitutes gross incompetency in the practice of dentistry. Former RCW 18.32.530 provides that "unprofessional conduct" for which a dentist can be "punished" includes "[g]ross incompetency in the practice of dentistry". No Washington court yet has defined gross incompetency in the practice of dentistry. However, we are inclined to adopt the definition set forth by the Supreme Court of Colorado in *Lee v. State Bd. of Dental Examiners,* 654 P.2d 839, 845 (Colo. 1982):

> [T]he term "gross incompetence," at least in the context of dentistry, connotes such an extreme deficiency on the part of the dentist in the basic knowledge and skill necessary to dental diagnosis and treatment that one may reasonably question his ability to practice dentistry at the threshold level of professional competence.

Viewing the Board's findings in light of this definition, we cannot say that the Board's conclusion, that Tomlinson was grossly incompetent, constitutes error of law. The Board found that Tomlinson left Laurie in an unconscious condition and that she was, thereby, placed at risk of death. According to Dr. Wade, it was unreasonable and imprudent for a dentist to leave a heavily sedated patient. The Dental Disciplinary Board, which is composed of five practicing dentists (RCW 18.32.560), found also that this conduct was grossly negligent. In our judgment, it is logical to conclude that a dentist who leaves a patient in such a condition has

demonstrated gross incompetency in the practice of dentistry. While there may be room for another opinion on that issue, the decision of the Board cannot be said to be arbitrary and capricious.

Tomlinson also asserts that the Board erred in concluding that his action constituted an "unsafe practice." The Board's determination in that regard is adequately supported by the findings that discharging a heavily sedated patient is grossly negligent and exposes the patient to an unacceptable probability of respiratory problems and possibly death. In light of these findings, the Board could justifiably conclude further that it is an unsafe practice to fail to monitor a sedated patient in respiratory distress. We cannot say the conclusion is arbitrary and capricious.

Tomlinson assigns error to the Board's conclusion that he is not competent to administer sedatives intravenously and that his practice of administering sedatives is a serious threat to his patients. We do not believe that such a conclusion constitutes error of law. Again, the Board found that discharging a heavily sedated patient is grossly negligent and that a patient in that condition is exposed to unacceptable risks. In light of the serious threat to Laurie that flowed from the administration of a sedative by Tomlinson, we cannot say that the Board erred in its legal conclusion that Tomlinson is not competent to administer sedatives intravenously.

### PENALTY

Finally, Tomlinson contends that the Board erred in suspending him from the practice of dentistry entirely, rather than suspending only his right to give intravenous sedations. He cites two cases from other jurisdictions in support of his position. In these cases courts have held that when only one area of a practice is affected, only that area should be affected by the suspension. *See Chew v. State Bd. of Med. Examiners*, 265 So. 2d 542 (Fla. 1972); *Wootan v. Axelrod*, 87 A.D.2d 913, 449 N.Y.S.2d 351 (1982). We disagree.

Appellate review of the penalty imposed by the Board is limited to whether the penalty is contrary to law or is arbitrary and capricious. *See In re Flynn,* 52 Wn.2d at 592. Clearly, the Board had lawful authority to suspend Tomlinson's license to practice dentistry. Former RCW 18.32-.640; former RCW 18.32.690.[3] The extent of the penalty also withstands appellate review. The Board's suspension of Tomlinson's practice for 90 days was obviously a response to Tomlinson's grossly negligent conduct toward Laurie, and it reflects the Board's concern that Tomlinson demonstrated an inability to handle emergency situations. As such, the conduct relates to his entire practice. In our judgment, the length and extent of the penalty does not appear to be the result of willful or unreasoning action. Consequently, it withstands review under the arbitrary and capricious standard. *Zoutendyk,* 27 Wn. App. at 72.

## ADDITIONAL PENALTY

We also conclude that the Board did not err in extending the penalty, not subject to stay, from 90 days to 120 days when the Board learned that Tomlinson administered a sedative intravenously after the first order had been entered. The Board's findings and conclusions that were entered after that second hearing indicate that the Board imposed the additional 30–day penalty for the reason that

---

[3]Former RCW 18.32.640 provides in pertinent part:

"The board shall have the following powers and duties:

". . .

"(6) To investigate complaints and charges of malpractice, unsafe conditions and practices, and to analyze equipment, procedures, and training, in such cases, and to direct corrective action."

RCW 18.32.690 provides, in pertinent part: "If a majority of the members of the board vote in favor of finding the accused guilty of unprofessional conduct as specified in the charges, or any of them, the board shall prepare written findings of fact *and may thereafter prepare and file in the office of the director a certificate or order of revocation or suspension of the license to practice,* in which case a copy thereof shall be served upon the accused, or the board may reprimand the accused, as it deems most appropriate." (Italics ours.)

Tomlinson did not show "adequate respect for the authority of the Board," and that Tomlinson "performed an intravenous sedation on June 2, 1986, nine (9) days after the receipt of the order forbidding such practices." Although we find the first reason given by the Board provides inadequate support for the additional penalty, the second reason is sufficient. RCW 18.130.050 gives the Board authority to discipline dentists for "unprofessional conduct" which includes the "[f]ailure to comply with an order issued by the disciplining authority . . ." RCW 18.130-.180(9).

We affirm.

WORSWICK, J., concurs.

REED, C.J. (concurring in the result)—I concur in the result. I have serious reservations, however, concerning our authority to disturb a sanction imposed by the Board—short of license revocation—after a finding of incompetency.

First, this issue was not thoroughly briefed. Second, I read the following language from *In re Flynn,* 52 Wn.2d 589, 596, 328 P.2d 150 (1958) as recognizing a further limit upon judicial review:

> We have no authority to substitute our judgment for that of the director of licenses in respect to the disciplining of members of the dental profession for unprofessional conduct. Our jurisdiction is limited to determining whether the action taken by the director followed the statute and met due process constitutional standards. . . .

And, as stated in *In re Kindschi,* 52 Wn.2d 8, 14, 319 P.2d 824 (1958):

> The legislature has vested authority and complete responsibility in the medical disciplinary board in such matters.

I view the "additional penalty" discussion, however, as being consistent with my reservations, because it involves

both an action in excess of statutory authority and due process implications.

Reconsideration denied March 8, 1988.

Review denied by Supreme Court July 5, 1988.