Leo N. TAYLOR, Petitioner,

v.

DEPARTMENT OF COMMERCE, STATE OF UTAH; and Division of Occupational and Professional Licensing, Respondents.

No. 970030–CA.

Court of Appeals of Utah.

Feb. 12, 1998.

---

Benson L. Hathaway Jr. and Richard J. Armstrong, Salt Lake City, for Petitioner.

Jan Graham and R. Paul Allred, Salt Lake City, for Respondent Division of Occupational and Professional Licensing.

Michael R. Medley, Salt Lake City, for Respondent Department of Commerce, State of Utah.

Before WILKINS, Associate P.J., BENCH and BILLINGS, JJ.

## OPINION

BILLINGS, Judge:

Petitioner Leo N. Taylor (Taylor) appeals an order by the Division of Occupational and Professional Licensing (the Division) revoking Taylor's veterinary license. We affirm.

## FACTS

Taylor was licensed to practice veterinary medicine in 1956. Since 1970, Taylor has practiced at the Brookside Animal Hospital in West Jordan, Utah, where he maintained a small and large animal practice.

In 1995, the Division began an investigation into several complaints it received against Taylor. After completing its investigation, the Division notified Taylor that it intended to seek sanctions against him for his alleged misconduct. Taylor requested a hearing, which was held on March 18–20, 1996, before an administrative law judge for the Department of Commerce. The Veterinary Licensing Board (the Board), composed of three veterinarians and one lay person, also heard the evidence presented at the three-day hearing.

At the hearing, the Division presented evidence that Taylor had engaged in unprofessional conduct in his treatment of five different dogs: Oscar, Nadia, Hillary, Shakesbear, and Char.

At the conclusion of the hearing, the Board entered a twenty-page recommended order detailing its findings of fact and conclusions of law. The Board specifically concluded that "[Taylor] has engaged in numerous instances of unprofessional conduct. Moreover, his practices of veterinary medicine reflect repeated occasions of gross incompetence, gross negligence and a pattern of negligence." The Board recommended Taylor's license be revoked. The Director of the Division, who also was present throughout the hearing, ultimately issued an order adopting the Board's recommendations. Taylor appealed the director's order revoking his license to the Executive Director of the Division. The Executive Director upheld the order, and this appeal followed.

Taylor argues on appeal that his veterinary license was improperly revoked because the evidence does not support the Division's conclusion that Taylor was grossly incompetent and grossly negligent and because the revocation of his license is contrary to prior Division practice.

## STANDARD OF REVIEW

 As a general rule, we review an agency's legal conclusions for correctness. *See, e.g., Drake v. Industrial Comm'n*, 939 P.2d 177, 181 (Utah 1997). However, a more deferential standard is appropriate when the legal issue is highly fact-specific and when there is sparse Utah precedent applying the legal standard to facts. *See id.* at 182 (citing *State v. Pena*, 869 P.2d 932, 939 (Utah 1994)). In the instant case, we must determine whether the Division correctly applied the legal standards of "gross incompetence" and "gross negligence" to Taylor's treatment of certain animals.[1] Determining whether a professional has practiced incompetently is

an intensely fact-specific inquiry. *See Vance v. Fordham*, 671 P.2d 124, 129 (Utah 1983) (noting review board's determination of "unprofessional conduct" in patient care is properly made on case-by-case basis drawing on board's "own knowledge of the patient-care standards of the profession"). Furthermore, there is no Utah case law determining whether a professional has been "grossly incompetent" or "grossly negligent" as those terms are used in the Occupational and Professional Licensing Act (the Act), which governs this case. Thus this issue is one " 'we cannot profitably review de novo in every case because we cannot hope to work out a coherent statement of the law through a course of such decisions.' " *Drake*, 939 P.2d at 182 (quoting *Pena*, 869 P.2d at 938). Accordingly, we grant deference to the Division's application of "gross incompetence" and "gross negligence" to the facts in this case.

## ANALYSIS

I. The Division's Conclusions That Taylor Was Grossly Incompetent and Grossly Negligent

### A. Gross Incompetence

 Taylor claims there was insufficient evidence before the Division for it to conclude he was grossly incompetent in his treatment of the two dogs Hillary and Shakesbear. The Division has not promulgated rules to define "gross incompetence." However, in its order, the Division used case law from other jurisdictions to define gross incompetence[2] in the context of providing professional care:

Generally, incompetence refers to something less than the 'minimally acceptable level of learning and skill' in the practice of a given profession. *Board of Dental Ex-*

---

1. Taylor argues there is insufficient evidence in the record to support the Division's findings that he was grossly incompetent and grossly negligent in his treatment of certain animals. However, in examining his contentions, we think the issue is more accurately characterized as whether the Division correctly applied the facts it found to the legal standards of gross negligence and gross incompetence. We thus do not reach the Department's claim that Taylor failed to marshal the evidence.

2. Taylor argues that the Division did not adequately set out the elements of "gross incompetence" and "gross negligence" in its order. However, we find the definitions of the terms the Division used in its order to be adequate. *Cf. Vance*, 671 P.2d at 129 (stating agency may define "unprofessional conduct" as it applies to patient care "on a case-by-case basis by drawing on the statutory standards ... and its own knowledge of the patient-care standards of the profession").

*aminers v. Brown,* 448 A.2d 881, 884 (Me. 1982). Gross incompetence is an extreme deficiency in the basic knowledge and skills necessary to practice at the minimum degree of necessary technical expertise or ability. *See Tomlinson v. State of Washington, Dental Disciplinary Board,* 51 Wash.App. 472, 754 P.2d 109, 114 (1988); *Faulkner v. North Carolina State Hearing Aid Dealers and Fitters Board,* 38 N.C.App. 222, 247 S.E.2d 668, 669–70 (1978).

The Division concluded Taylor "was grossly incompetent in his treatment of Hillary when he elected to only palpate the dog as the sole means to diagnose her condition." The Division made detailed findings of fact regarding Taylor's treatment of Hillary, all supported by substantial evidence in the record. In sum, these findings included the following pertinent facts.

Hillary was an English Bulldog that Taylor had artificially inseminated. When Hillary exhibited labor symptoms, her owner called Taylor. He instructed her to bring Hillary in the next day. When Hillary arrived at Taylor's clinic the next day, she had already passed two dead pups. Taylor examined Hillary by palpating her, even though the physiology of the English Bulldog makes it impossible to determine by palpation if a female has delivered her entire litter. Taylor released Hillary the next day without taking an x-ray and told Hillary's owner that the dog had passed her last pup and the pups were premature. That night, Hillary bled heavily, and her owner took Hillary to Dr. Mayling Chinn, where Hillary passed a mature pup. After taking an x-ray, Dr. Chinn performed an emergency cesarean section on Hillary, removing a final mature pup. Hillary nearly died from the prolonged labor. The Division found Taylor improperly released Hillary without taking an x-ray and, as a result, Hillary's health had been jeopardized.

Taylor argues there is insufficient evidence in the record regarding his treatment of Hillary to show "an extreme deficiency in the basic knowledge and skills necessary to practice," the Division's definition of "gross incompetence." We disagree and under our deferential review uphold the Division's determination.[3] Furthermore, the Division not only concluded Taylor was grossly incompetent when he treated Hillary, but also concluded Taylor's treatment of the dog violated generally accepted standards of veterinary medicine. In its conclusions of law, the Division noted that under section 58-1-501, "violating ... any generally accepted professional or ethical standard" constitutes one form of unprofessional conduct. *See* Utah Code Ann. § 58-1-501(2)(b) (1997). Dr. Chinn's testimony clearly supports the Division's conclusion that Taylor's care of Hillary fell below a generally accepted professional standard.[4]

█ Taylor also argues there was insufficient evidence in the record to support the Division's conclusion that he was grossly incompetent "when he diagnosed [Shakesbear's] condition without resort to any adequate x-rays, ... made an unsubstantiated prognosis and then recommended the dog be euthanized." Taylor treated Shakesbear after the dog suffered a spinal injury. The evidence showed that Taylor took one x-ray of the half-paralyzed Shakesbear, informed Shakesbear's caretaker that the dog would never walk again, then suggested Shakesbear be put to sleep. In its findings of fact, the Division stated Taylor "did not take two x-rays to accurately diagnose Shakesbear's condition. Further, the x-ray which [Taylor] took reveals no evidence of any misaligned disks."

---

3. We also uphold the Division's conclusion that Taylor was grossly negligent in his treatment of Hillary. As it did for "gross incompetence," the Division turned to case law from other jurisdictions to define "gross negligence" in the context of professional practice. The Division could reasonably have concluded Taylor's conduct regarding Hillary satisfied any of these definitions of gross negligence.

4. Dr. Chinn testified as follows regarding Taylor's treatment of Hillary:

Q: Based upon what you know[,] that is that there was no [x-ray] performed by Dr. Taylor, did the standard of care that he provided for Hillary fall below the accepted standard?
A: From the information that I have, I feel that it did.

Taylor claims there is "no evidence that [ ] failure to take a second x-ray manifests an extreme deficiency in basic knowledge and skill." We disagree. Dr. Petersen, to whom Shakesbear was taken for a second opinion, testified regarding the single x-ray Taylor took. He stated that Taylor's diagnosis was incorrect, and that at least two x-rays should have been taken before recommending euthanasia. Thus we cannot say the Division erred in determining that Taylor was grossly incompetent when he based his diagnosis on one inadequate x-ray and recommended Shakesbear be put to sleep.[5]

### B. Gross Negligence

■ Finally Taylor challenges the Division's conclusion that he was grossly negligent "when he misdiagnosed the cause of Char's death." Char was a shar-pei that died when Taylor was performing a routine spaying on her. Taylor performed a necropsy on Char and determined she had pneumonia in both lungs and an irregularly shaped heart. The Division made the following factual findings regarding the results of Taylor's necropsy:

> [Char's owner] took Char's body to Dr. Scott Vande Griend on October 12, 1994. Dr. Vande Griend performed a second necropsy on that date. The second necropsy revealed no irregular shaped heart or any evidence of pneumonia. No abnormalities were detected as to Char's heart or lungs. Based on the more credible evidence presented, [Taylor] misdiagnosed the cause of Char's death.

At the hearing two veterinarians testified that there was no excuse for Dr. Taylor's misdiagnosis. Based on the above testimony, and applying our deferential standard of review, we conclude the Division did not err in concluding Taylor's misdiagnosis constituted gross negligence.[6]

### II. The Division's Departure From Prior Practice

■ Taylor argues that because no other veterinarian has had his license revoked, the Division acted contrary to its prior practice, and thus this court should reverse the Division's decision. The Utah Administrative Procedures Act allows appellate courts to grant relief from agency action that is "contrary to the agency's prior practice, *unless the agency justified the inconsistency by giving facts and reasons that demonstrate a fair and rational basis for the inconsistency.*" Utah Code Ann. § 63–46b–16(4)(h)(iii) (1993) (emphasis added). Subsection 63–46b–16(4)(h)(iii) "explicitly permit[s]" an inconsistent act "if the agency can 'demonstrate a fair and rational basis'" for the inconsistency. *SEMECO Industries v. State Tax Comm'n,* 849 P.2d 1167, 1174 (Utah 1993) (Durham, J., dissenting).

This court recently set out the parties' burdens under a claim that an agency acted contrary to prior practice:

> ... section [63–46b–16(4)(h)(iii) ] requires a petitioner to establish as a prima facie case that the administrative agency's action in his or her case was "contrary to the agency's prior practice." If a petitioner meets this burden, section 16(4)(h)(iii) un-

---

**5.** Taylor also contends there was inadequate evidence to support the Division's legal conclusion that Taylor was grossly negligent in his treatment of Shakesbear. We again conclude that, based on the evidence before the Division and its detailed findings of fact, and applying our deferential standard of review, the Division's legal conclusion was correct. First, we find Dr. Petersen's testimony reasonably supports the conclusion that Taylor's treatment of Shakesbear was grossly negligent. Further, we find ample evidence in the record to support the conclusion that Taylor "failed to provide adequate nursing observation and care as to maintain Shakesbear in a sanitary environment."

**6.** Taylor also contends the Division violated his right to due process when it failed to notify him

that it would consider failure to acknowledge wrongdoing, make restitution, or attempt to rectify wrongdoing as aggravating factors against him. We do not address this argument because Taylor did not present this issue before the Department in his request for review of the Division's decision and thus has failed to preserve it for appeal. *See, e.g., Gibson v. Board of Review of Indus. Comm'n,* 707 P.2d 675, 677 (Utah 1985) ("Issues not raised before the administrative agency are waived on appeal."). Additionally, we are persuaded the Division's order was proper based solely on its determinations of gross incompetence, gross negligence, and unprofessional conduct.

ambiguously requires that "the agency justify the inconsistency" with prior decisions. Therefore, as noted by Justice Durham [in *SEMECO*], establishing this prima facie case by a preponderance of the evidence shifts the burden to the agency to "demonstrate a fair and rational basis" for the departure from precedent in the instant case. If the agency then sets forth its rationale for deviation from its own precedent or an explanation to demonstrate consistency, our review of the explanation will be on the basis of "reasonableness and rationality."

*Pickett v. Utah Dep't of Commerce,* 858 P.2d 187, 191 (Utah Ct.App.1993). Thus we first determine whether Taylor has established a prima facie case that the division acted contrary to prior practice.

In support of his contention that the Division acted inconsistently, Taylor points to six prior cases in which veterinarians faced allegations of unprofessional conduct but did not have their licenses revoked. However, none of the prior cases presents facts substantially similar to the facts in Taylor's case. Five of the six prior cases involved no actual malpractice in the care or treatment of animals. In four of these cases the veterinarians were unlawfully administering or prescribing controlled substances to humans. In the fifth case a veterinarian had embezzled funds from his clinic.

The only other case involving mistreatment of animals by a veterinarian was the case of Dr. Norman R. Hafen. Dr. Hafen conducted an on-site large animal veterinary practice and also ran a small animal practice out of facilities adjacent to his home. The Division found Dr. Hafen violated numerous regulations governing maintenance of veterinary facilities. The Division did not revoke Dr. Hafen's license. However, the Division prohibited Dr. Hafen from practicing at his clinic until it was extensively remodeled and the Division had inspected and approved the changes. Further, Dr. Hafen was prohibited from maintaining a small animal practice at *any* location unless the Division first inspected and approved the facilities.

■ In Dr. Hafen's case, the Division's action was aimed at ending the danger to the public associated with the inadequate facilities at Dr. Hafen's small animal practice. In contrast, Taylor's misconduct sprang from Taylor's own personal professional incompetence. In Taylor's case, the Division specifically found that Taylor's "misconduct permeates many critical phases of his veterinarian practice." Thus, Taylor's case is not comparable to the case of Dr. Hafen. We conclude that Taylor has not established a prima facie case that the Division's decision to revoke his license was contrary to its prior practice.[7]

---

7. Even if we were to conclude Taylor has established a prima facie case that the Division acted contrary to prior practice when it revoked his license, we conclude the Division reasonably demonstrated a "fair and rational basis" for its action. The Division stated:

> [Taylor] has repeatedly engaged in unprofessional conduct in the fundamental aspects of the practice of veterinary medicine. He has failed to render adequate diagnoses and he has not provided adequate pre-operative care. [Taylor] utterly failed to perform and complete an effective surgical procedure in one instance. He also failed to render adequate post-operative care on two occasions. Taylor does not generally maintain adequate medical records. Simply put, Taylor's misconduct permeates many critical phases of his veterinary practice.
> . . . .
> . . . [Taylor's] ability and willingness to provide veterinary care at a measurably lower cost does not relieve him of the continuing obligation to provide competent and adequate ser-

vices to those animal owners who seek his veterinary services. The Board reluctantly, but necessarily concludes the Recommended Order [to revoke Taylor's license] set forth below is warranted to properly address the nature and severity of [Taylor's] repeated gross incompetence, gross negligence and his failure to conduct a veterinary practice consistent with those generally accepted standards governing that profession.

The above reasons, coupled with the extensive factual findings the Division entered in its order, satisfy the requirement that an agency give "facts and reasons that demonstrate a fair and rational basis for the inconsistency" with its prior action. Implicit in the Division's reasons for revoking Taylor's license is the conclusion that in order to adequately protect the public, it was necessary for the Division to prevent Taylor from continuing to practice. Although revocation of a professional's license is a harsh measure, we conclude that in this case the Division met its burden of demonstrating that its decision to revoke Taylor's license was fair and rational.

## CONCLUSION

Giving deference to the Division's conclusions, we conclude that the Division was correct in its determination that Taylor was grossly incompetent in his treatment of Hillary and Shakesbear and that Taylor was grossly negligent in his treatment of Hillary, Shakesbear, and Char. Furthermore, the Division did not act contrary to its prior practice in revoking Taylor's license. We therefore affirm the Division's order.

WILKINS, Associate P.J., and BENCH, J., concur.